IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

_____
                                )
 UNITED STATES OF AMERICA,       )
                                )
       Plaintiff,                )
                                )
       vs.                       ) Case No. 2:23-cr-00153-DAK
                                )
 ROBERT SUTHERLAND MACLEAN,      )
                                )
       Defendant.                )
_____)


JURY TRIAL

BEFORE THE HONORABLE DALE A. KIMBALL


VOLUME III

Pages: 392 to 403


JULY 23, 2025

Time: 11:44 a.m. to 12:01 p.m.


Reported by:
Michelle B. Gonsalves, RPR, CRR, CBC, CSR
351 South West Temple, Room 7.431, Salt Lake City, Utah 84101
michelle_gonsalves@utd.uscourts.gov || 801.783.8657

**APPEARANCES**

**FOR THE PLAINTIFF:**

    Michael P. Kennedy, Esq.
    **US ATTORNEY'S OFFICE**
    111 South Main Street, Suite 1800
    Salt Lake City, Utah 84111
    801.524.5682
    michael.kennedy@usdoj.gov

    Bryan N. Reeves, Esq.
    **US ATTORNEY'S OFFICE**
    111 South Main Street, Suite 1800
    Salt Lake City, Utah 84111
    801.524.5682
    bryan.reeves@usdoj.gov

**FOR THE DEFENDANT:**

    Aaron B. Clark, Esq.
    **DENTONS DURHAM JONES & PINEGAR PC**
    111 South Main Street, Suite 2400
    Salt Lake City, Utah 84110-4050
    801.415.3000
    aaron.clark@dentons.com

    Jordan E. Westgate, Esq.
    **DENTONS DURHAM JONES & PINEGAR P**C
    111 South Main Street, Suite 2400
    Salt Lake City, Utah 84110-4050
    801.415.3000
    jordan.westgate@dentons.com

July 23, 2025          Salt Lake City, Utah          11:44 a.m.

P R O C E E D I N G S

* * *

THE COURT:  Good morning.  I'm advised that the jury has reached a verdict, so we'll bring them in and see what it is.

Well, just a second.  Everybody's here who is expected to be here, is that correct?

MR. CLARK:  Yes, Your Honor.

MR. KENNEDY:  Yes, Your Honor.

THE COURT:  All right.  Thanks.

THE COURTROOM DEPUTY:  All rise, please.

*(Jurors enter the courtroom at 11:47:00 a.m.)*

THE COURTROOM DEPUTY:  The Court will resume session. You may be seated.

THE COURT:  Juror No. 12, you're carrying the paper, I assume you're the foreperson.

JUROR NO. 12:  That's right.

THE COURT:  Has the jury reached the unanimous verdict?

JUROR NO. 12:  It has.

THE COURT:  Will you hand it to the CSO, please.

JUROR NO. 12:  Sure.

THE COURT:  The verdict will now be published; that is, read aloud in open court.

394

**THE COURTROOM DEPUTY:**  We the jury, after having carefully reviewed all of the evidence presented and all the instructions given to us in this case, find the Defendant, Robert Sutherland MacLean, as to Count 1 of the indictment, abuse of sexual conduct in the special aircraft jurisdiction of the United States guilty.

**THE COURT:**  Do you want the jury polled?

**MR. CLARK:**  Yes, Your Honor.

**THE COURT:**  The clerk will poll the jury.

**THE COURTROOM DEPUTY:**  Juror No. 1, is this your true and correct verdict?

**JUROR NO. 1:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 2, is this your true and correct verdict?

**JUROR NO. 2:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 3, is this your true and correct verdict?

**JUROR NO. 3:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 4, is this your true and correct verdict?

**JUROR NO. 4:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 5, is this your true and correct verdict?

**JUROR NO. 5:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 6, is this your true

and correct verdict?

**JUROR NO. 6:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 7, is this your true and correct verdict?

**JUROR NO. 7:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 8, is this your true and correct verdict?

**JUROR NO. 8:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 9, is this your true and correct verdict?

**JUROR NO. 9:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 10, is this your true and correct verdict?

**JUROR NO. 10:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 11, is this your true and correct verdict?

**JUROR NO. 11:**  Yes.

**THE COURTROOM DEPUTY:**  Juror No. 12, is this your true and correct verdict?

**JUROR NO. 12:**  Yes.

**THE COURT:**  All right.  That's the verdict.  Thank you for your service.  Our system wouldn't work unless people like you came in and served.  We know this isn't easy.  We know it's difficult.  It takes time and effort.  So thank you again for your service.  You're excused.

THE COURTROOM DEPUTY:  All rise, please.

*(Jurors exit the courtroom at 11:49 a.m.)*

THE COURT:  What do you want to tell me, if anything?

MR. KENNEDY:  Your Honor, under 18 U.S.C. § 3143, the United States is requesting that Mr. McLain be detained pending sentencing.

THE COURT:  Mr. Clark?

MR. CLARK:  Your Honor, that does not seem necessary at all here.  He's been compliant for months and months on pretrial release here.  He's shown up.  We're talking about an offense that has a two-year statutory maximum.  He has already served over two months in custody when he was detained at arrest.

You know, we cannot predict how the Court is ultimately going to sentence him, but there is a real chance that we will be asking for a time-served sentence, and it will be warranted in this case.  I just don't see any reason why he needs to be detained today, Your Honor.

MR. KENNEDY:  And, Your Honor, a couple of things on that.  First of all, my understanding and recollection of what the estimated guidelines are, are certainly higher than two months.  And, in fact, my recollection and my calculation is that it's closer to the statutory maximum.

As Your Honor is aware under 3143, once there is a guilty verdict, the presumption shifts, and it's accepted that

the Defendant shall be detained unless he presents clear and convincing evidence that he is not a risk of non-appearance, a risk of flight, or a danger to the community.  And information has been developed since his pretrial release that we think significantly shows certainly a risk of non-appearance, and possibly a risk of danger and obstruction.

We have information I believe it's been presented to Your Honor in the form of pretrial release report update that suggests that Mr. MacLean has been, um, harassing or trying to extort his children and his ex-wife to recant testimony in another case with the idea that that would help him in this case.  And they have refused to do that, and he has at least cut off at least one child and perhaps others financially for their refusal to do that.  And we believe that is an attempt to influence these proceedings with perhaps a different -- a lower criminal history score or something like that.

We also have reliable reports that in the past Mr. MacLean has used false identification after convictions in other cases.  We -- he has significant financial resources.  He has ties to foreign countries, multiple foreign countries.  His current spouse is, as we understand it, a Canadian citizen living in Texas.  He has frequent ties in France.  We understand from family sources that he has -- had already made plans to travel to France next month, and we are concerned about both flight and obstruction of justice, Your Honor.

THE COURT:  Mr. Clark?

MR. CLARK:  Your Honor.

THE COURT:  There is a presumption of detention.

MR. CLARK:  There is a presumption of detention absent clear and convincing evidence, I acknowledge that, and also there is clear and convincing evidence that he's not a flight risk or a danger.  That what Mr. Kennedy is calling reliable evidence appears to be the statements of Mr. MacLean's son, who is 28 years old, who I believe lives in New York City.

I've seen these text messages exchanged, Your Honor. Mr. MacLean was trying to get an expungement of a conviction that he had, I think in Colorado, ages ago, when his kids, when his children were much younger.  Not for help of this case, but because he was not expected to be convicted in this case and thought it would be nice to have a clean record.

Now, there is a disagreement between Mr. MacLean and his son; and frankly, there are significant religious issues between them.  Mr. MacLean's son, let's just say, is of non-traditional sexuality, and that's a problem in some Christian faiths as is known, and there has been a significant disagreement between them.

Yes, Mr. MacLean has asked for his children to sign a petition that would -- to sign a declaration to help him get expungement, and his son said, "I can't sign that because it wouldn't be true."  Mr. MacLean has never asked his son to

399

commit perjury for him. And, in fact, what came back from his son, Your Honor, just shows how -- the courtroom is not necessarily the place for these family dynamics. But his son said, "If you give me $1 million, I will say anything that you want."

We're -- Mr. MacLean is not a flight risk, Your Honor. Yes, he was probably planning to fly to France because, again, he thought he would be getting his passport back because he thought he would not be convicted, which is not the case.

THE COURT: Does he have a passport?

MR. CLARK: Yes, Your Honor, but it's with the Court. The Court ordered it surrendered when it ordered him released on pretrial conditions. I think that the months and months that we've had of good behavior on pretrial release. The fact that he had so many family members and friends here, Your Honor, to support him and be with him, and the fact that we're facing what really in the federal scheme of things is not a significant sentence that warrants a finding of clear and convincing evidence that he's neither a flight risk nor a danger to the community here.

THE COURT: Well, I don't know -- excuse me, Mr. Kennedy --

MR. KENNEDY: Sorry.

THE COURT: I don't know yet what the guideline range is going to be. While we're thinking about that, let's set a

sentencing date.  Seventy days?

MR. CLARK:  Yes.

MR. KENNEDY:  Yes, Your Honor.

THE COURTROOM DEPUTY:  That's October 1st.  We can do it that day at 10:30 in the morning.

MR. CLARK:  Yes, Your Honor.

MR. KENNEDY:  Yes.

THE COURT:  All right.  Sentencing is set on October 1, 2025, at 10:30 a.m.

You were going to say something else?

MR. KENNEDY:  Yes, Your Honor, I was.  Mr. Clark might have a better point if it was just his son, Mr. MacLean's son Alec, but it's more than that.  It's his -- it's his ex-wife Wendy.  It's his daughter Sophie.  It's his daughter Kiera, all of whom he has threatened in one way or another to cut off financially.  We have text messages.

Again, we don't want to turn this court into a Jerry Springer Show or a family dynamics, but, I mean, basically, um, he texted his ex-wife Wendy.  "Wendy you need to pay insurance for Sophie."  That's his youngest daughter who is in college. "As I paid $2,500 for spring tuition, $500 for fall tuition, and another $1500 in tuition in January that you are supposed to pay.  We can wipe off all of that debt if you are willing to tell the truth about the menacing charge in 2007, and set the record straight for me.  There will be no repercussions to you

or kids, only good."

To his son Alec, "I did not use a scissor to threaten your mom.  I'm asking you to tell the truth.  You were eleven and manipulated by your mom.  No judge will penalize you."

Alec responds, "No judge is going to overturn a felony case on one statement either.  I tried my hardest to help you, and you were spitting in my face."

He goes on to say, and I am skipping a couple of entries, Your Honor.  This is for the record.  Mr. MacLean writes, "It's yours and my statement against Mom and Kiera and would be overturned because they would see the manipulation of Mom, especially all the evidence of her lying and cheating."

And then he concludes, "It's okay, Alec.  You, Mom, and Kiera can continue this lie, but no financial help from me. Ask them."

He ultimately did cut off Alec, Alexander MacLean, financially when Alec sent a letter supporting his father but not recanting his prior testimony about the underlying facts.

THE COURT:  Mr. Clark?

MR. CLARK:  Your Honor, we're talking about cutting off a 28-year-old man from financial assistance, and that is being offered to the Court as potential obstruction.  We just heard that his youngest child is at the University of Texas. If he's deciding to no longer financially support these people, I don't see how that presents an obstruction issue that

warrants him being detained now pending sentencing, Your Honor. He's otherwise been completely compliant. And he does still provide financial support for his youngest and for an uncle who is 86 years old.

THE COURT: As I say, I don't know what the guideline will turn out to be after the presentence report is prepared, and I get a chance to review it and think about it, but I'm going to detain him. So he'll be detained. That will be the order.

THE COURTROOM DEPUTY: Do you want me to get the marshals down here then? Oh, there's Josh.

THE COURT: Sure. We'll be in recess on this matter.

MR. KENNEDY: Thank you, Your Honor.

MR. REEVES: Thank you, Your Honor.

(The hearing was adjourned at 12:01 p.m.)

C E R T I F I C A T E

STATE OF UTAH        )
                     )
                     )   ss.
                     )
COUNTY OF SALT LAKE  )


        This is to certify that the proceedings in the

foregoing matter were reported by me, Michelle Gonsalves, RPR,

CRR, CBC, CSR, in stenotype and thereafter transcribed into

written form;

        That said proceedings were taken at the time and

place herein named;

        I further certify that I am not of kin or otherwise

associated with any of the parties of said cause of action and

that I am not interested in the event thereof.

        In witness whereof I have subscribed my name this

12th day of August 2025.




*Michelle Gonsalves*
_____

Michelle Gonsalves, RPR, CRR, CBC, CSR