Aaron B. Clark (15404)
Jordan E. Westgate (16098)
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
aaron.clark@dentons.com
jordan.westgate@dentons.com

*Attorneys for Defendant, Robert Sutherland MacLean*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT SUTHERLAND MACLEAN,<br><br>Defendant. | **DEFENDANT'S MOTION FOR NEW TRIAL**<br><br>Case No: 2:23-CR-00153<br><br>Judge Dale A. Kimball |

Defendant Robert MacLean ("**Defendant**" or "**Mr. MacLean**"), through counsel and pursuant to Rule 33 of the Federal Rules of Criminal Procedure, submits this Motion for New Trial.

## BACKGROUND

On March 1, 2022, Mr. MacLean and W.J. ("**W.J.**" or the "**alleged victim**") were passengers on United Airlines Flight 5433 from Chicago, Illinois to Salt Lake City, Utah. (Gov't Exhibits 3–4.) W.J. occupied seat 3D (window), and Mr. MacLean sat in 3C (aisle). (*Id.*) As W.J. reached her seat during final boarding, Mr. MacLean introduced himself as "Bobby," and they briefly exchanged pleasantries. (ECF No. 89 (Vol. II), Trial Transcript at 115:5–24.) The remaining

1

SL_8145017.1

twelve first-class passengers[1] and a flight attendant stationed at the front of the cabin were seated nearby. (*Id.* at 108:17–20 (stipulation of fact); 257:18–24.) W.J. did not report any alleged misconduct to law enforcement immediately upon landing. (*Id.* at 277:21–23.)

***W.J.'s Conflicting Statements***

### Initial Report to Police

W.J.'s first report came the next morning, March 2, 2022, when she telephoned the Salt Lake City Police Department's non-emergency line—approximately twelve hours after the flight had landed. (Police Report, GO# 2022-37776, attached as Ex. A.) She spoke with Officer Miguel Ruiz, giving an account that described only two alleged contacts: one incidental brushing of her breast with Mr. MacLean's arm, and one grab of her breast while he purportedly attempted to fasten her seat belt. (*Id.* at 4.) The report contains no reference to multiple gropings or any allegation of simultaneous two-handed contact, nor does it indicate that Mr. MacLean made any comments about W.J.'s physical appearance. (*See generally id.*) Instead, the report attributes both incidents to a single arm or hand. (*See id.* at 4.)

### Subsequent FBI Interviews

Nine days later, on March 11, 2022, W.J. met with FBI Special Agents Wright and Gartland and expanded her account to four separate alleged contacts. (FD-302, attached as Ex. B.) In this version, Mr. MacLean allegedly brushed her breast twice while she was knitting, touched her again mid-flight by reaching under her arm, and, during descent, grabbed her breast while claiming he

---

[1] The government did not even attempt to identify, let alone interview, the twelve other first-class passengers until more than three years after the alleged incident—and then only less than two months before trial. This belated effort underscores the government's lack of diligence in investigating potentially critical eyewitnesses and deprived the defense of a fair opportunity to locate and prepare testimony from individuals who could have corroborated or contradicted the W.J.'s account.

2

was helping with her seat belt. (*Id.* at 2–3.) Each description again involved one hand on one breast. (*See id.*)

More than three years later, on June 2, 2025, W.J. gave a follow-up interview to Task Force Officer Kylie Ruiz, in which her allegations grew further. (FD-302, attached as Ex. C.) This time, she described at least six separate contacts: five single-handed touches of one breast, each followed by an apology, and—for the first time—a two-handed grab of both breasts during descent. (*Id.* at 2.) This new account significantly increased both the frequency and severity of her allegations. (*See generally id.*)

### *The Criminal Charge*

Based on W.J.'s allegations, the government charged Mr. MacLean with one count of Abusive Sexual Contact in the Special Aircraft Jurisdiction of the United States, in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506. (Indictment, ECF No. 1, filed Apr. 19, 2023.) The Indictment alleged that Mr. MacLean knowingly engaged in sexual contact with W.J. without her consent, acting with the intent to abuse, humiliate, harass, or degrade her, or to arouse or gratify sexual desire, by allegedly touching her breast through her clothing. (*Id.* at 1–2.)

### *Denial of Defendant's Request for a Lesser-Included Offense Instruction*

Before trial, Mr. MacLean requested that the Court instruct the jury on simple assault as a lesser-included offense of abusive sexual contact. (Req. for Lesser-Included Offense Jury Instr. ("**Def.'s Req.**"), ECF No. 65, filed July 17, 2025.) The government opposed, contending that simple assault under 18 U.S.C. § 113(a)(5) was legally insufficient and unsupported by the evidence. (Resp. to Def.'s Req. for Lesser-Included Offense Jury Instr. ("**Gov't Resp.**"), at 1, 6–8, ECF No. 70, filed July 18, 2025.) Instead, the government argued that, if a lesser-included offense were warranted, it would be assault by striking, beating, or wounding under 18 U.S.C.

3

§ 113(a)(4). (*Id.* at 3–4.) Even so, the government maintained that the evidence would not permit a rational jury to acquit on the greater offense while convicting on the lesser. (*Id.* at 7–8.)

On the first day of trial, the Court indicated its preliminary view that it was "inclined to deny" Mr. MacLean's request for a simple assault instruction. (ECF No. 86 (Vol. I), Trial Tr. at 88:8–9.) The Court explained that the authorities cited on pages five and six of the government's response were "reasonably persuasive" but emphasized that it had not yet reached a final decision and would rule definitively the following morning. (*Id.* at 88:9–12.)

During the jury instruction conference the next day, the government suggested instead that 18 U.S.C. § 113(a)(4) (assault by striking, beating, or wounding) might be the more appropriate lesser offense, citing Tenth Circuit authority providing pattern elements for that subsection. (ECF No. 89 (Vol. II), Trial Tr. at 93:12–94:2.) The Court, however, observed that the defense motion had specifically requested an instruction only under § 113(a)(5) (simple assault). (*Id.* at 93:7–11, 17–18.) After discussion, the Court stated it was inclined to give the § 113(a)(5) instruction unless persuaded otherwise upon further review. (*Id.* at 95:20–22.) The Court then pressed defense counsel on the evidentiary basis for such an instruction, asking: "[W]here is the testimony that if there is a touching . . . it is an accidental or, you know, slight on the knee?" (*Id.* at 94:14–17.) Defense counsel responded: "From what we heard from Mr. Reeves yesterday [during opening statement], it is going to come from the flight attendant who said she saw Mr. MacLean touch [W.J's] knee." (*Id.* at 94:18–21.)

Following W.J.'s testimony, but before the close of the evidence,[2] the Court reversed course, ruling: "I'm not going to give a lesser included. I'm going to instruct on the indictment and

---

[2] The Court issued this ruling before the close of the government's case. At that point, W.J. had testified, but neither the flight attendant nor the FBI task force officer had taken the stand. The defense had not yet begun its case, and it remained uncertain whether Mr. MacLean would ultimately testify. In other words, the Court did not wait to hear the full evidentiary record before making its final ruling—despite the government's own acknowledgment that

not include the thing you asked for." (*Id.* at 243:4–6.) The Court added only that, although it had previously indicated it was inclined to give the instruction, it had "done a lot of research and thinking since then." (*Id.* at 243:9–10.) The Court did not articulate a clear legal basis on the record for denying Mr. MacLean's request.

### *Restriction on Defendant's Right to Impeach the Alleged Victim with Prior Inconsistent Statements*

During trial, defense counsel sought to cross-examine W.J. about prior inconsistent statements she allegedly made during an interview with the Salt Lake City Police on March 2, 2022. (ECF No. 89 (Vol. II), Trial Tr. at 186:2–11.) On direct examination, W.J. testified that Mr. MacLean touched her breasts six times. (*Id.* at 149:23–25; *see also id.* at 185:24–186:1 (cross examination); *id.* at 217:1–4 (redirect examination).) When cross examined about her prior statement to police, W.J. denied ever telling an officer that the touching occurred only twice and further insisted that she had reported six incidents from the outset. (*Id.* at 186:10–18.) Defense counsel then attempted to show W. J. the Salt Lake City Police report summarizing the March 2, 2022 interview. (*Id.* at 186:19–21.)

At sidebar, the government objected, arguing defense could not even show W.J. the police report because the report was not W.J.'s statement but rather an officer's summary that W.J. had not adopted, and therefore inadmissible for impeachment. (*Id.* at 186:24–187:10.) The Court sustained the objection, reasoning that the report was "not her statement" and thus could not be used to impeach her credibility. (*Id.* at 187:20–21; 189:23–24; 190:9–11.) Although defense counsel requested permission to show W.J. the report and ask whether the contents were accurate, (*Id.* at 187:11–15, 22–23; 188:7–15, 22–24; 189:8–9, 14–16, 18–19; 189:25–190:1), the Court

---

"final determination [of Mr. MacLean's request for a lesser included offense instruction] must be deferred until the close of evidence." (Gov't Resp. at 1 n.1.) The Court's premature ruling was therefore inconsistent not only with settled procedure but also with the position taken by the government itself.

5

barred any use of the police report for impeachment, instructing that only a witness such as the officer who authored the report could be questioned about it. (*Id.* at 190:9–11.) Defense counsel objected to the ruling and preserved the issue for the record. (*Id.* at 190:15–20.)

Following a two-day trial on July 21–22, 2025, the jury convicted Mr. MacLean on Count 1 – Abusive Sexual Contact in the Special Aircraft Jurisdiction of the United States. (ECF No. 87 (Vol. III), Trial Tr. at 395:1–6.) Mr. MacLean moves the Court for a new trial based on legal error that deprived him of his right to a fair trial, including the Court's refusal to permit impeachment of the alleged victim with prior inconsistent statements and its denial of his request for a lesser-included offense instruction.

## STANDARD OF REVIEW

Rule 33 authorizes a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial can be granted if the verdict "was against the manifest weight of the evidence," or if a "substantial legal error" occurred during the proceedings. *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). When the motion is based on trial error rather than newly discovered evidence, a new trial is warranted if the error affected the defendant's substantial rights or could reasonably have influenced the verdict. *See United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). Because the rule entrusts the Court with broad discretion to ensure fairness, a new trial should be granted whenever legal error undermines confidence in the outcome of the trial.

## ARGUMENT

### I.   THE COURT'S IMPROPER RESTRICTION ON CROSS EXAMINATION OF THE ALLEGED VICTIM CONSTITUTED LEGAL ERROR.

The Court erred in prohibiting defense counsel from cross-examining the W.J. about prior inconsistent statements that she made to law enforcement.

6

## A. The Sixth Amendment's Confrontation Clause Guarantees the Right to Effective Cross Examination.

The Sixth Amendment to the United States Constitution guarantees individuals the right to confront witnesses. *See* U.S. Const. amend. VI. Pursuant to the Confrontation Clause, defendants are guaranteed an opportunity for "effective cross-examination." *United States v. Owens*, 484 U.S. 554, 559, (1988) (citation omitted). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (holding that petitioner was denied the right of effective cross-examination, "constitutional error of the first magnitude" that cannot be cured by a showing of lack of prejudice (quoting *Brookhart v. Janis*, 384 U.S. 1, 3 (1966))). Accordingly, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id.*

Here, the Court curtailed that constitutional guarantee by prohibiting defense counsel from confronting W.J. with prior inconsistent statements she made to law enforcement. (Trial Tr. at 187:20–21; 189:23–24; 190:9–11.) The defense sought to question her with the police report documenting her initial claim that Mr. MacLean touched her twice, a statement that directly contradicted her trial testimony that he touched her six times. (*Id.* at 186:10–21.) That line of questioning lay at the very core of effective cross-examination—it tested her memory, exposed material inconsistencies, and allowed the jury to assess whether her allegations escalated over time. At a minimum, the defense should have been permitted to show the report to W.J. to ask whether she would adopt or subscribe to its contents. *See Pagan-Romero v. United States*, No. CV 19-2008 (RAM), 2022 WL 15523367, at *6 (D.P.R. Oct. 27, 2022) (holding that "[a]ny form of statement is acceptable for impeachment by prior inconsistent statement" and that Federal Rule of Evidence 613(b) "has no requirement that the witness have adopted the prior statement" (alteration in

original) (quoting *United States v. Catalan-Roman*, 585 F.3d 453, 464 n.12 (1st Cir. 2009)). This is the ordinary and proper method of impeachment by prior statement: the witness is given an opportunity to confirm, deny, or explain the statement before the jury. *See* Fed. R. Crim. P. 613. Foreclosing even that basic procedure deprived the defense of the most direct means to probe the truthfulness of her evolving account.

Restrictions on cross-examination that prevent the jury from receiving sufficient information to evaluate a witness's credibility strike at the core of the Confrontation Clause. This case is no exception. By cutting off inquiry into whether W.J. previously described fewer instances of contact—and preventing her from being shown the very document that captured her initial statements—the Court eliminated the defense's only meaningful avenue to challenge her reliability. Because the government's case depended almost exclusively on W.J.'s testimony, the limitation on cross-examination rendered the trial fundamentally unfair to Mr. MacLean.

### B. The Court Erred in Prohibiting Use of the Police Reports to Confront W.J. with Prior Inconsistent Statements.

The credibility of W.J. was the linchpin of the government's case. Her trial testimony—that Mr. MacLean touched her six times—directly conflicted with her initial statement to law enforcement, memorialized in a police report, where she described only two incidents. W.J.'s testimony also conflicted with the initial report, which contained no reference to any remarks by Mr. MacLean regarding her physical appearance. The defense sought to confront W.J. with these inconsistencies by showing her the report and asking whether she made, adopted, or subscribed to the statement it recorded. The Court's ruling foreclosed this basic line of impeachment—the only one available to Mr. MacLean since the government's failure to conduct a thorough investigation and obtain testimony from other potential witnesses effectively barred his defense through other avenues.

8

Courts have recognized that impeachment by prior inconsistent statement is permitted even when the statement is recorded in a law enforcement report rather than written by the witness herself. The First Circuit recently confirmed that while a defendant may need to establish foundation to admit a report as an exhibit, "cases prohibiting the 'use' of an investigator's report that has not been signed or adopted by the witness do not uniformly forbid any line of questioning that reads from the report." *United States v. Matta-Quiñones*, 140 F.4th 1, 23–25 (1st Cir. 2025). Indeed, the First Circuit has explicitly found that a district court abuses its discretion when it "effectively cut off all attempts by defense counsel to ask [a witness] about his prior inconsistent statement in [a law enforcement] report," even though the witness had not signed or adopted the report. *Id.* at 21–23; *see also United States v. Majeed*, No. 21-20060-JAR, 2025 WL 1262457, at *24 (D. Kan. May 1, 2025) (emphasizing that the defense is entitled to confront a witness with prior inconsistent statements in FBI 302s to test credibility, even where the witness offers an explanation for the discrepancy); *United States v. Baiyewu*, No. CR 21-395 (RAM), 2025 WL 2180800, at *18 (D.P.R. Aug. 1, 2025) (holding that the defense may refer to or read from FBI 302 reports, offer them as exhibits with proper foundation, and cross-examine a witness about prior statements to law enforcement, including those contained in such reports). That is precisely what occurred here.

Here, Mr. MacLean was not attempting to introduce the report into evidence. At a minimum, Mr. MacLean should have been permitted to show W.J. the police report and ask whether she made the statement reflected therein, whether she would adopt it, or whether she would explain the inconsistency. Rule 613(b) of the Federal Rules of Evidence contemplates exactly this process: a witness is confronted with a prior statement and given an opportunity to

9

admit, deny, or explain it. Preventing the defense from pursuing even this limited procedure deprived the jury of essential credibility evidence. The error requires a new trial.

### C. Precluding This Line of Cross-Examination Deprived the Jury of Essential Credibility Evidence.

The Court's ruling barred the defense from presenting the jury with evidence directly bearing on the alleged victim's credibility. At trial, W.J. testified that Mr. MacLean touched her breasts six times. Yet in her initial interview with the Salt Lake City Police Department, the contemporaneous report memorialized her statement as two incidents of touching. Defense counsel attempted to cross-examine her with this inconsistency by showing her the police report and asking whether she made that prior statement or whether she would adopt it as her own. The government objected, and the Court sustained the objection, preventing the jury from seeing or hearing about this inconsistency.

The inconsistency was not an isolated matter. W.J.'s story grew progressively worse as the case approached trial. What began as an allegation of two touches escalated into testimony of six touches in front of the jury. The defense was entitled to explore that shift in detail because it went to the heart of whether her account was reliable or inflated over time. The jury, however, was never allowed to hear about this evolution in her allegations.

This ruling struck at the heart of the defense's case. The number of alleged contacts was a critical factual issue for the jury to resolve, and the discrepancy between W.J.'s trial testimony and her prior statements to law enforcement would have provided jurors with an important tool to evaluate her reliability. Credibility was the central issue in this trial: the government's case hinged almost entirely on W.J.'s word. By foreclosing impeachment with the police report, the Court deprived the jury of the opportunity to fully assess whether W.J.'s account was consistent, accurate, and trustworthy.

10

The Constitution guarantees a defendant the right to confront the witnesses against him, which includes the ability to test the reliability of their testimony through meaningful cross-examination. Here, that right was curtailed at the very point it mattered most—on the only issue the jury had to decide. Without the benefit of hearing about W.J.'s prior inconsistent statement and the worsening trajectory of her story, the jury was left with a materially incomplete picture of her credibility. The exclusion of this critical impeachment evidence deprived the defense of a fair opportunity to challenge the government's case and undermined the jury's ability to fulfill its fact-finding role.

## II.    THE COURT ERRED IN REFUSING THE INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF SIMPLE ASSAULT.

A defendant is entitled to a lesser-included offense instruction when: (1) the defendant makes a proper request; (2) the lesser offense contains some, but not all, of the elements of the greater offense; (3) the element(s) differentiating the two offenses are disputed; and (4) the evidence would permit a rational jury to convict on the lesser offense while acquitting on the greater. *See United States v. Moore*, 108 F.3d 270, 272 (10th Cir. 1997); *see also United States v. Bruce*, 458 F.3d 1157, 1162 (10th Cir. 2006).

Here, Mr. MacLean satisfied each of these requirements. Nonetheless, the Court declined to provide the requested instruction for simple assault. The record reflects no substantive reasoning for that decision. The Court stated only: "I'm not going to give a lesser included. I'm going to instruct on the indictment and not include the thing you asked for." (Trial Tr. 243:4–6.) The Court added merely that, although it had previously indicated it was inclined to give the instruction, it had "done a lot of research and thinking since then." (*Id.* at 243:9–10.) The absence of a reasoned basis for denying a properly requested instruction—particularly one supported by law and the evidence—constitutes legal error and deprived the jury of the ability to consider an appropriate

11

alternative verdict. Mr. MacLean is entitled to a new trial on this basis.

### A. Mr. MacLean Properly Requested a Lesser-Included Offense Instruction, a Point the Government Conceded.

It is undisputed that Mr. MacLean properly requested that the jury be instructed on simple assault under 18 U.S.C. § 113(a)(5) as a lesser-included offense of the charged crime of abusive sexual contact. (*See generally* Def.'s Req.) The government conceded this factor in its response to Mr. MacLean's request. (*See* Gov't Resp. at 2.)

### B. Simple Assault Contains Some, But Not All, of the Elements of Abusive Sexual Contact.

The second requirement under *Moore* asks whether the elements of the proposed lesser offense are a subset of the elements of the charged offense.[3] 108 F.3d at 272. The Supreme Court has explained that this inquiry is purely legal: whether it is possible to commit the greater offense without also committing the lesser. *See Schmuck v. United States*, 489 U.S. 705, 716–19 (1989) (adopting the elements test to determine whether a lesser-included offense instruction is warranted).

Here, the elements of simple assault fall entirely within those of abusive sexual contact. "Section 113(a)(5) criminalizes '[s]imple assault,' a term grounded in the common law." *United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009). To prove simple assault under 18 U.S.C. § 113(a)(5), the government must establish beyond a reasonable doubt that the defendant: (1) intentionally touched the victim; (2) in an offensive manner; (3) there was no excuse or justification for the touching, and (4) the touching occurred in the special maritime and territorial jurisdiction of the United States. *See United States v. Whitefeather*, 275 F.3d 741, 743 (8th Cir.

---

[3] The government essentially conceded the second *Moore* factor. In its response, it acknowledged that "the likely greater weight of authority from other circuits" supports the view that the elements of assault can be a subset of abusive sexual contact in cases such as this, and further stated that, if properly framed, it "is prepared to concede that the elements prong is satisfied." (Gov't Resp. at 3–4.)

SL_8145017.1

2002).

By contrast, abusive sexual contact under 18 U.S.C. § 2244(b) requires proof of "sexual contact," defined as the intentional touching of another's intimate body part "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3); *see also* 49 U.S.C. § 46506 (applying Section 2246(3) to acts on aircraft in the special aircraft jurisdiction of the United States).

**Comparison of Offense Elements**

| Simple Assault (18 U.S.C. § 113(a)(5)) | Abusive Sexual Contact (18 U.S.C. § 2244(b), defined in § 2246(3)) |
|---|---|
| 1. Defendant intentionally touched the victim. | 1. Defendant intentionally touched the victim's intimate body part (directly or through clothing). |
| 2. The touching was offensive (i.e., offended a reasonable sense of personal dignity). | 2. The touching was without consent. |
| 3. The touching occurred in the special maritime and territorial jurisdiction of the United States. | 3. The touching occurred in the special maritime and territorial jurisdiction of the United States. |
|  | 4. Defendant acted with the intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire. |

As the chart illustrates, each element of simple assault is necessarily proven when the government proves abusive sexual contact. Both offenses require an intentional touching of the victim, and in both instances that touching must be offensive. The only additional element required for abusive sexual contact is proof of a specific sexual or abusive intent—that the touching was done to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire. Because the government cannot establish abusive sexual contact without first establishing all elements of simple assault, the latter is properly recognized as a lesser-included offense of the charged crime.

13

This conclusion is consistent with the governing legal standard and with precedent recognizing simple assault as a subset of abusive sexual contact. *United States v. Williams*, 197 F.3d 1091, 1095 (11th Cir. 1999) (holding that the district court erred in refusing to give a lesser-included instruction for simple assault); *see also United States v. Mays*, 514 F. Supp. 2d 1298, 1301–02 (M.D. Fla. 2007) ("[E]very instance of abusive sexual contact occurring in a civilian aircraft in flight in the United States is also a simple assault aboard that aircraft."); *United States v. Erramilli*, No. 11 CR 0778, 2013 WL 1403206, at *5 (N.D. Ill. Apr. 4, 2013), *aff'd*, 788 F.3d 723 (7th Cir. 2015) (instructing the jury on simple assault as a lesser included offense of abusive sexual contact); *United States v. Roberson*, No. 2:23-CR-00123-LK, 2024 WL 2782528, at *1 (W.D. Wash. May 30, 2024) (noting that the defendant pleaded guilty to simple assault as the lesser-included offense of abusive sexual contact).

The legal framework and persuasive precedent establish that simple assault is a lesser-included offense of abusive sexual contact, satisfying the second requirement under *Moore*.

### C. The Differentiating Element—Mr. MacLean's Intent—Was Disputed at Trial.

The third *Moore* factor asks whether the differentiating element between the greater and lesser offenses is in dispute. 108 F.3d at 272. Here, that element—sexual or abusive intent—was squarely contested at trial.

To convict on abusive sexual contact, the jury had to find beyond a reasonable doubt that Mr. MacLean touched W.J. "with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. §§ 2244(b), 2246(3). By contrast, a conviction for simple assault under 18 U.S.C. § 113(a)(5) requires only proof of an intentional offensive touching without justification or excuse. That differentiating element—sexual intent—was sharply contested at trial. The government's theory rested entirely on W.J.'s testimony that

14

Mr. MacLean touched her breast multiple times in an allegedly sexual manner. But no other witness corroborated her account. The sole third-party witness, the flight attendant, testified only that Mr. MacLean touched W.J.'s knee while asking her to order another drink. (Trial Tr. at 268:14–15 ("He put his hand on her knee, like come on, like, you know, just a very friendly gesture to have a drink.").) That conduct, if credited, could reasonably be understood as an intentional and offensive touching, but it does not necessarily establish sexual or abusive intent.

Defense counsel did not dispute the flight attendant's testimony. The jury thus heard from an unbiased witness that Mr. MacLean touched W.J.'s knee, while the only evidence of sexual intent came from W.J.'s uncorroborated testimony about breast touching. This created a genuine dispute as to whether Mr. MacLean acted with sexual intent. In such circumstances, controlling precedent makes clear that a defendant is entitled to a lesser-included offense instruction. *See Keeble v. United States*, 412 U.S. 205, 208 (1973); *Fitzgerald v. United States*, 719 F.2d 1069, 1071 (10th Cir. 1983) ("It is true that the Supreme Court has ruled that if there is a lesser crime, the defendant is entitled to an instruction on it if the evidence justifies it.")

### D. The Evidence Would Permit a Rational Jury to Convict on Simple Assault While Acquitting on Abusive Sexual Contact.

The fourth *Moore* factor is satisfied because the evidence at trial would permit a rational jury to convict Mr. MacLean of simple assault while acquitting him of abusive sexual contact. *See* 108 F.3d at 272. The threshold for giving a lesser-included instruction is low. Indeed, "[i]f there is evidence from which a jury could rationally find a defendant guilty of the lesser included offense and acquit of the greater, a defendant is entitled to an instruction on the lesser included offense, 'however weak that evidence may be.'" *United States v. Herrell*, 41 F. App'x 224, 233–34 (10th Cir. 2002) (quoting *United States v. Humphrey*, 208 F.3d 1190, 1207–08 (10th Cir. 2000), *abrogated on other grounds by United States v. Pinder*, 121 F.4th 1367, 1371 (10th Cir. 2024)).

15

The Eleventh Circuit's decision in *Williams* illustrates the point. There, the court explained that even minor physical contact may constitute common law battery, and thus simple assault under 18 U.S.C. § 113(a)(5). 197 F.3d at 1092–93, 1096; *see also United States v. Lewellyn*, 481 F.3d 695, 698 (9th Cir. 2007). The defendant in *Williams* was accused of sexually touching a minor, but he testified that any contact occurred only when he inadvertently bumped into her leg and part of the chair she was sitting in. 197 F.3d at 1093. The district court refused his request for a simple assault instruction, but the Eleventh Circuit reversed, reasoning that a rational jury could have found the contact to be a "willful offensive touching of another" without sexual intent—conduct that qualified as simple assault. *Id.* at 1096–97.

Here, the evidence fairly tended to bear on the lesser offense of simple assault. The government's case for abusive sexual contact depended entirely on the testimony of W.J. No other witness corroborated her account. Specifically, no one testified to seeing Mr. MacLean touch W.J.'s breast, nor did anyone corroborate her testimony that he made comments about her physical appearance.

By contrast, the only conduct observed by a third-party witness—the flight attendant—was Mr. MacLean purportedly touching W.J.'s knee while asking her to join him for another drink. (Trial Tr. at 268:14–15.) Although Mr. MacLean did not testify, defense counsel did not dispute this testimony. Crucially, the flight attendant's testimony was the only testimony from an unbiased witness who had not consumed any alcohol during the flight. (*Id.* at 381:6–9.) The flight attendant's testimony, if credited, created a situation in which the jury could have reasonably disbelieved W.J.'s testimony that Mr. MacLean touched her breast while nevertheless believing that he touched her knee. In that event, the jury could have concluded that Mr. MacLean committed an intentional

16

and offensive touching sufficient for simple assault under 18 U.S.C. § 113(a)(5), but not the additional elements required for abusive sexual contact under *Id.* § 2244(b).

The statutory definition confirms this distinction. The knee is not among the statutorily defined intimate body parts—genitalia, anus, groin, breast, inner thigh, or buttocks—whose touching constitutes "sexual contact." *Id.* § 2246(3). Thus, a rational jury could well have found that the government failed to prove sexual contact beyond a reasonable doubt, while still finding an offensive touching sufficient to convict on simple assault. That is precisely the situation in which a lesser-included instruction is constitutionally required—to provide the jury with a legitimate third option rather than forcing it into an all-or-nothing choice. *See Beck v. Alabama*, 447 U.S. 625, 637 (1980).

The Court's refusal to instruct the jury on the lesser-included offense of simple assault deprived the defendant of a fair trial by preventing the jury from considering a legally supported alternative verdict consistent with the evidence presented.

### III.    THE ERRORS WERE NOT HARMLESS AND REQUIRE A NEW TRIAL.

#### A.  Each Error Independently Warrants Relief Under Rule 33.

##### 1. *The Court's refusal to allow Mr. MacLean to confront the alleged victim with prior inconsistent statements memorialized in police reports was prejudicial.*

The Court's refusal to permit impeachment of the alleged victim with her prior inconsistent statements constituted reversible error standing alone. At trial, W.J. testified that Mr. MacLean touched her breast six times. Yet in her initial interview with police, she reported only two such touches. This discrepancy went directly to the central issue in the case—her credibility.

By prohibiting defense counsel from even showing W.J. the police reports to confront her with these inconsistencies or provide an opportunity for her to adopt the statements, the Court deprived the jury of critical evidence bearing on the reliability of the government's sole witness.

17

SL_8145017.1

The government presented no physical evidence and no corroborating testimony of breast touching. In this context, the government's case rose and fell on W.J.'s credibility, and the excluded impeachment was essential to the jury's ability to evaluate it.

The jury was therefore left with a one-sided narrative, untested by the very contradictions that would have cast doubt on the linchpin of the prosecution's case. Because this restriction prevented effective cross-examination on a material issue, and because the government's case depended almost entirely on W.J.'s testimony, the error was plainly prejudicial and warrants a new trial.

### 2. *The Court's denial of Mr. MacLean's request to instruct the jury on simple assault as a lesser-included offense of abusive sexual contact was not harmless error.*

The Court's rejection of Mr. Maclean's request to instruct the jury on simple assault as a lesser-included offense constituted reversible error standing alone. The evidence at trial was thin and contested. The government's case depended almost entirely on the testimony of a single witness with no corroboration of the breast-touching she described. The only touching described by a third party—the flight attendant—was her observation that Mr. MacLean touched W.J.'s knee. (Trial Tr. at 268:14–15.) This testimony, even if credited, falls far short of corroborating the charged offense of abusive sexual contact.

In these circumstances, a rational jury could well have concluded that the government had not met its burden to prove abusive sexual contact beyond a reasonable doubt but still found the evidence sufficient to convict on the lesser offense of simple assault. Without that lawful option, the jury was left with a stark choice of conviction on the greater offense or acquittal. That prejudice is precisely why both the Supreme Court and the Tenth Circuit recognize the denial of a lesser-included instruction as reversible error when the evidentiary predicate exists.

18

### B. The Combined Effect of Both Errors Deprived the Defendant of a Fair Trial.

The Court's errors did not occur in isolation. First, the Court prohibited Mr. MacLean from cross-examining the alleged victim about prior inconsistent statements memorialized in police reports—an essential tool of impeachment that lies at the core of the Sixth Amendment's Confrontation Clause. Second, the Court refused to instruct the jury on simple assault as a lesser-included offense of abusive sexual contact, despite a proper request and sufficient evidentiary basis.

The Supreme Court has long recognized that the absence of a lesser-included instruction deprives a jury of the "third option" between outright acquittal and conviction on the greater offense. *Beck v. Alabama*, 447 U.S. 625, 637 (1980). By eliminating that option, the Court forced the jury into an impermissible "all-or-nothing" choice, substantially prejudicing the defense. Here, that prejudice was compounded by the Court's refusal to permit impeachment of the key witness, thereby depriving the jury of critical information with which to assess her credibility.

Taken together, these errors undermined the reliability of the verdict and deprived Mr. MacLean of the fair trial guaranteed by the Constitution. The combined effect of preventing meaningful cross-examination and refusing to provide the jury with a lawful alternative verdict constitutes reversible error. At a minimum, these errors require a new trial in "the interest of justice." Fed. R. Crim. P. 33(a).

### CONCLUSION

For the reasons set forth above, the Court's rulings restricting Mr. MacLean's ability to impeach the alleged victim with her prior inconsistent statements and denying his request for a lesser-included offense instruction constituted legal error. These errors deprived the jury of the tools necessary to fully and fairly evaluate the credibility of the government's key witness and to

SL_8145017.1

consider an appropriate lesser charge supported by the evidence. Taken together, the errors resulted in a miscarriage of justice. Accordingly, Mr. MacLean respectfully requests that the Court vacate the judgment and grant him a new trial.

DATED this 29th day of August, 2025.

**DENTONS DURHAM JONES PINEGAR**

*/s/ Aaron B. Clark*
Aaron B. Clark
Jordan E. Westgate
*Attorneys for Defendant, Robert MacLean*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August 2025, a true and correct copy of the foregoing was served via the Court's Electronic Filing System to all counsel of record.

/s/  *Molly Mallard*
Molly Mallard

20

SL_8145017.1