FELICE JOHN VITI, Acting United States Attorney (#7007)
MICHAEL KENNEDY, Assistant United States Attorney (#8759)
BRYAN N. REEVES, Assistant United States Attorney (DC#994799)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
email: michael.kennedy@usdoj.gov

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT SUTHERLAND MACLEAN a.k.a. 'BOBBY',<br><br>Defendant. | Case No.  2:23-cr-00153-DAK<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Senior District Judge Dale A. Kimball |

The United States of America, by and through the undersigned Assistant

United States Attorney, hereby submits its Sentencing Memorandum setting forth

the position of the United States concerning the appropriate sentence for defendant

Robert Sutherland MacLean.  For the reasons discussed herein, the United States

respectfully requests a sentence at the high end of the Sentencing Guideline range

for incarceration found by the Court.[1]  The United States also requests a fine of $30,000.00 be imposed, and a term of supervised release of three years following incarceration.[2]  Restitution is mandatory pursuant to 18 U.S.C. §§ 2248, 3663A, and 3664.  The United States requests that the Court order restitution at sentencing, deferring only the determination of the amount of restitution to a date within 90 days of sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

### A.    Legal Standard

"In sentencing defendants, district courts exercise a guided discretion within a range specified by Congress.  As Justice Cardozo wrote, a 'judge … is to exercise discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to the primordial necessity of order in the social life.'"[3] In considering what sentence to be imposed in any given case, the Court must consider the factors listed in 18 U.S.C. § 3553(a). One of those factors is "the kinds of sentence and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines" promulgated by the Sentencing Commission. 18 U.S.C. § 3553(a)(4)(A). Although

---

[1] That is 18 months as recommended in the PSR. In the event the Court applies an enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 cmt. 4(A) and (B) (see PSR Addendum, Doc. 97-1), the United States recommends a sentence of 21 months, the high end of the revised range.

[2] The United States is requesting an additional special condition of supervision, discussed below.

[3]    *United States v. Smart*, 518 F.3d 800, 809 (10th Cir. 2008) (citations omitted).

the Sentencing Guidelines are advisory, according to the Supreme Court in *Gall v.*

*United States*:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [she] may not presume that the Guidelines range is reasonable. . . [She] must make an individualized assessment based on the facts presented. If [she] decides that an outside-Guidelines sentence is warranted, [she] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, [she] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.[4]

"[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"[5]  "The sentencing judge, on the other hand, has 'greater familiarity with . . . the individual case and the individual defendant before [her] than the Commission or the appeals court.'"[6]

---

[4]  552 U.S. 38, 49-50 (2007) (citations omitted).
[5]  *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).
[6]  *Id.* at 109 (quoting *Rita*, 551 U.S. at 357-58).

18 U.S.C. § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which [the Court] may receive and consider for the purpose of imposing an appropriate sentence." Under USSG § 6A1.3, "[i]n determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy."[7]

**B.    Under the 18 U.S.C. § 3553(a) Factors, a High-End Sentence of Incarceration and a Fine of $30,000.00 Comports with the Statutory Requirements of Sentencing**

Under 18 U.S.C. § 3553(a), in imposing "a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing established by Congress[8], the Court is required to consider *first,* the nature and circumstances of the offense and the history and characteristics of the defendant; *second*, the need for the sentence imposed to (*a*) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (*b*) afford adequate deterrence to criminal conduct, (*c*) protect the public from further crimes

---

[7]    *See United States v. Pawelski*, No. 15-1056, 2016 WL 3212998, at *24 (10th Cir. June 2, 2016).

[8] 18 U.S.C. § 3553(a); s*ee also United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007) ("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2)."

of the defendant, and (*d*) provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; ***third***, the kinds of sentences available; ***fourth***, the Sentencing Guidelines themselves; ***fifth***, the need to avoid creating unwarranted sentencing disparity; and ***sixth***, the need to provide restitution to victims.  In this case, the § 3553(a) factors all support a sentence at the top of the range found by the Court.

The § 3553(a) factors and the Sentencing Guidelines also support imposing the significant fine of $30,000.00 requested by the United States in addition to the sentence of incarceration.  U.S.S.G. § 5E1.2(a), relating to fines for individual defendants, states that "the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is unlikely to become able to pay any fine."  The Guideline further provides that in determining the amount of the fine, the court shall consider, *inter alia*, "the need for the *combined* sentence to reflect the seriousness of the offense (including the harm . . . to the victim . . .), to promote respect for the law, to provide just punishment and to afford adequate deterrence." U.S.S.G. § 5E1.2(d)(1) (emphasis added).  Finally, the Guideline states that the "amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." U.S.S.G. § 5E1.2(d).

*1(a).*  *The Nature and Circumstances of the Offense.*

The nature and circumstances of the offense are extremely serious.  The facts of this case are well-known to the Court.  During an approximately 3-hour airplane flight from Chicago to Salt Lake City, the defendant repeatedly sexually assaulted the victim.  On March 1, 2022, the defendant and the victim, W.J., were seated next to each other on United Airlines Flight 5433 from Chicago to Salt Lake City.  Their seats were in the first-class cabin; W.J. was in seat 3D (window) and the defendant was in seat 3C (aisle).  W.J. was traveling for business in support of her role as Director of Human Resources for her company. The defendant greeted W.J. upon taking his seat by initiating a handshake between them and she greeted him back.

The defendant introduced himself as "Bobby" and told the victim that he worked in software, and he was divorced.  The two shared other information about their families, including that both had daughters in the legal profession.  Their initial conversation was pleasant, but W.J. found some of the defendant's political comments uncomfortable and did not want anyone to think that she and the defendant were together. (Tr. Vol. II July 22, 2023 at 114-116 (hereinafter 'Tr. at #').)

Later in the conversation, the defendant told W.J. he previously had a cocaine addiction, and that God helped him overcome it.  He then asked W.J. if she's used cocaine.  W.J. replied, "No. I am a rule follower."  The defendant then stated, "I like that answer, you're my type" and he told her he found her attractive. (Tr. at 120-121.)

After the initial conversation and early into the flight The defendant entered W.J.'s personal space and put his arm under hers, asking her to show him how to knit.  The defendant then pressed up against W.J.'s left shoulder and she felt the defendant touch her breast for the first time with the back of his hand as he withdrew his arm. (Tr. at 123-126.)

A little while later, the defendant reached over and grabbed W.J.'s breast. W.J. pushed his hand from her chest, telling him to keep his hands to himself.  The defendant said he was sorry, that he should leave W.J. alone, but that he found her "attractive" and "sexy".  At one point, the defendant asked W.J., "Can I tell you that you are sexy?" and she replied "Well, you just did so let's not say it again." (Tr. at 126-128.)

Over the course of the flight, The defendant sexually assaulted W.J. six times, groping and grabbing her breasts each time without her consent. (Tr.

*passim*.) Specifically, on the third assault, W.J. admonished the defendant, saying "Stop!" "Keep your hands to yourself!" "Please don't touch me!" (Tr. at 131-133.) When the defendant left his seat to go to the bathroom, W.J. summoned the flight attendant (M.T.). She asked the flight attendant to stop serving the defendant alcohol and told her that the defendant was "getting handsy." (Tr. at 134-136.) Later during the flight, while the defendant was or appeared to be asleep, the flight attendant initiated an exchange of notes with W.J. in which the flight attendant asked if W.J. was ok and W.J. responded that the defendant was groping her and saying inappropriate things. The flight attendant offered to have police meet the plane on landing, and W.J. declined the offer. (Tr. at 142-144.)

As the aircraft prepared for its descent and the seat belt announcement was made, and The defendant leaned over and grabbed both of W.J.'s breasts again while saying "We need to get you in a seatbelt." In total, there were six instances during the flight in which the defendant touched W.J.'s breasts without her consent. (Tr. at 147.) The victim was scared and traumatized the entire time of the flight, feeling helpless and abandoned. The offense has had a serious and long-term impact on her personally, emotionally, and professionally, as described in both her trial testimony and her victim impact statement to the Court.

These facts describe a very serious offense.  The recommended sentence of a high-end term of incarceration and a fine of $30,000 appropriately accounts for the nature and circumstances of the offense in this case.

> *1(b).  History and Characteristics of the Defendant.*

The defendant's history and characteristics support the recommended sentence.  The defendant has a significant criminal history, including domestic violence in 2008, criminal impersonation in 2011, drug possession in 2019, and extreme DUI (2007) and reckless driving under likely DUI circumstances in 2021. He also has arrests for violating protective orders (2008-2013), for battery and disorderly conduct (2015) and for disorderly conduct and resisting arrest (2015). Given the severity and recency of many of his criminal incidents, these cannot be written off as merely incident to a difficult divorce in 2008.

Significantly, the defendant also has a history of misconduct on an airplane. On May 2, 2022, two months after the assault for which he was convicted in this case, the defendant the defendant was drunk and disorderly on another flight and threatened flight attendants. The FAA cited him civilly for interference with a flight crew.  Notably, although the defendant is not alleged to have sexually touched anyone on the May 2, 2022, flight, some of his reported conduct was similar to the conduct at issue in the instant case, including conversing with

9

unrelated female passenger seated next to him, introducing himself, sharing personal information, having numerous drinks, and leaning into that passenger's space. This passenger also asked the flight attendant not to wake him up. At the end of the flight, the defendant told this other passenger that it was nice to meet her and rushed past her to deplane ahead of others.[9] All of this is similar to conduct ascribed to the defendant in this case and shows a pattern of misconduct.

According to his self-report to the Probation Office as detailed in the PSR, the defendant has significant financial resources and income capacity.

In sum, the history and characteristics of the defendant comport with the recommended sentence of a high-end term of incarceration and a substantial fine of $30,000.00 in this case.

### 2. *The Need for the Sentence Imposed to Address Other Statutory Sentencing Purposes.*

The second sentencing factor the Court must consider is the need for the sentence imposed to (*a*) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (*b*) afford adequate deterrence to criminal conduct, (*c*) protect the public from further crimes of the

---

[9] See Report attached as Attachment A.

10

defendant, and (*d*) provide the defendant with needed educational or vocation

training, medical care, or other correctional treatment in the most effective manner.

### a. <u>Seriousness of the offense.</u>

The need for the sentence imposed to reflect the seriousness of the offense,

to promote respect for the law, and to provide just punishment for the offense is

partially addressed in Subsection 1(a) above, relating to the nature and

circumstances of the offense.  As described, this offense is especially serious.  The

defendant abused and assaulted the victim multiple times over a sustained period.

The victim was vulnerable due to the enclosed space and circumstances of a late-

night flight.  As she testified, she felt trapped, abandoned, and helpless.  Only a

sentence of incarceration at the high end of the sentencing guidelines, and a

substantial fine will adequately reflect the seriousness of the offense.

### b. <u>Adequate deterrence.</u>

The next key purpose of sentencing which 18 U.S.C. § 3553(a) mandates

that Court must consider and satisfy is that the sentence imposed "afford adequate

deterrence to criminal conduct."[10]  Deterrence in this context relates primarily to

general deterrence of others who might otherwise be tempted to engage in similar

---

[10]   18 U.S.C. § 3553(a)(2)(B).

crimes, rather than the specific deterrence of the defendant, which is addressed in § 3553(a)(2)(C) (protection of the public from further crimes of the defendant).[11]

It is well known that passenger misconduct on commercial aircraft is a serious and increasing problem.  Advising the Court as an officer of the Court, the undersigned avers that sexual assaults similar to that committed by the defendant are not uncommon.  Many cannot be charged because the victim does not possess the willingness and courage to pursue the matter as did the victim in this case. But this type of crime – for which there is only federal jurisdiction – needs to be deterred.  Only a serious penalty as recommended by the United States can provide adequate deterrence in this case.

c. Protection of the public from further crimes of the defendant.

This factor likewise weighs in favor of a sentence at the high end of the applicable Sentencing Guideline, and a substantial fine.  The defendant has a substantial criminal history evidencing a propensity for aggression, violence, and assault.  He engaged in similar conduct on an airplane within months of committing the offense in this case.  A serious, substantial penalty of incarceration

---

[11]    *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, Circuit Judge, dissenting) ("Thus, when a district court considers § 3553(a)(2)(B), it should focus on whether a sentence will provide general deterrence.") (citing *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)).

and fine, as recommended by both the Guidelines and the United States, is an appropriate disincentive to future misconduct, and will protect the public from further offenses while he is incarcerated and under court supervision.

### d. Provide the defendant with needed education or treatment.

This factor is marginally relevant, based on the information in the Presentence Report. The defendant is well-educated. He likely needs drug, alcohol, and behavioral treatment. But nothing about the recommended sentence would preclude or hinder such treatment, and the Bureau of Prisons has counseling and educational programs that would facilitate such treatment. However, the United States concurs in the recommendation of the Probation Officer that a condition of the defendant's supervised release be that he participate in substance abuse evaluation and treatment.

### 3. The Kinds of Sentences Available.

In this case, incarceration required by the Sentencing Guidelines, although probation is technically allowed by statute. A fine is required under the Guidelines unless the defendant demonstrates an inability to pay a fine. Based on all the factors previously discussed, the term of incarceration of the high end of the Sentencing Guideline range determined by the Court and a fine of $30,000.00 is appropriate.

4. *The Sentencing Guidelines.*

"[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"[12]  Here, the advisory Guideline range (as calculated in the PSR) is 12-18 months, with a 24-month statutory cap.  If an enhancement is applied, the advisory range would be 15-21 months.  The United States' sentencing recommendation for incarceration is by definition within the Guideline range.

The fine range under the Guidelines is $5,500 to $55,000.[13]  U.S.S.G. § 5E1.2(d) sets forth seven factors the Court should consider in selecting the fine amount in addition to the § 3553(a) factors already discussed.  Those factors include evidence related to the ability to pay; the burden the fine would place on the defendant or his dependents; restitution owed; the collateral consequences of conviction including civil obligations; whether the defendant has been fined for a similar offense; costs to the government for incarceration and supervision; and any other pertinent equitable considerations.

---

[12] *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

[13] At OL 12/CH Cat.II. If an enhancement under § 3C1.1 applied, the fine range at OL 14/CH Cat. II is $7,500-$75,000.  U.S.S.G. § 5E1.2(c)(3).

Each of these factors supports the $30,000 fine requested by the United States, which also is the midpoint in the Sentencing Guideline range.[14]  The defendant has a demonstrated ability to pay based on self-reported assets and income potential, he has no legal dependents, the fine is not so large as to impair the ability to pay restitution (which is anticipated to be comparatively minor), there are no presently known civil obligations, and he has not yet been fined for a similar offense.[15]  The costs of incarceration and supervision are set out in the PSR (¶ 114).

In further support of the appropriateness of the requested fine amount, the United States avers that it has reviewed the regulations of the FAA related to civil enforcement actions to determine what the civil penalty fine would likely be for the offense the defendant committed. The penalty range for a sexual assault against another passenger would be from $20,000 to $43,658, with a midpoint of $31,829.[16]

---

[14] $55,000-$5,500 = $49,500 ÷ 2 = $24,750 + $5,500 = $30,250.

[15] As noted in the PSR and discussed above, the defendant is facing a potential civil penalty of $9,000 in an action by the FAA relating to the May 2, 2022, interference with a flight crew incident.  Also see Attachment A.

[16] Attached as Attachment B (at Page 9-5).

A sentence of imprisonment at the high end of the Sentencing Guideline range determined by the Court, combined with a mid-range fine of $30,000 is an appropriate and correct sentence under this factor.

### 5.  *The need to avoid creating unwarranted sentencing disparity.*

This factor requires the Court to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[17]  The sentencing disparity factor relates specifically to disparities among similarly situated defendants nation-wide.  "[T]he purpose of the Guidelines is to eliminate unwarranted disparities in sentencing nationwide, not to eliminate disparity between co-defendants."[18]

In this case, the United States is not aware of data from which make a disparity comparison or argument.  The United States recommends that the Guidelines, which were developed specifically to avoid unwarranted disparities, provides the appropriate guidance on this factor.  The Guidelines range recommends a sentence including the high-end incarceration and mid-range fine requested by the United States.

---

[17] 18 U.S.C. § 3553(a)(7).

[18] *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir.1997); *accord United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir 2008).  In the instant case, there are no codefendants.

### 6. *The need for restitution.*

The amount of the defendant's restitution is presently unknown, but the known total at the time of sentencing is approximately $3,200.[19]   However, in light of the defendant's ability to pay based on self-reported assets and income potential,  the defendant's ability to pay restitution will be not be substantially affected by a sentence including the high-end term of incarceration and mid-range fine requested by the United States.

### C.  Special Conditions of Supervision.

The Tenth Circuit has advised that particular and "focused" attention be given in sentencing hearings to the issue of supervised release conditions.[20]  The United States respectfully requests that the Court impose on the defendant the special conditions of supervision recommended by the Probation Office.

Conditions of supervised release have to be reasonably related to the 18 U.S.C. § 3553(a)(1) factor of the nature and history of the offense and the history and characteristics of the defendant, and the § 3553(a)(2) factors of deterrence, protection of the public, and education and training.  Additionally, they must impose no greater deprivation of liberty than reasonably necessary, and they must

---

[19] This number is very preliminary, does not include all therapy and attendance costs, and does not account for possible subrogated therapy costs paid by insurance.
[20] *United States v. Martinez-Torres*, 795 F.3d 1233, 1234 (10th Cir. 2015).

be consistent with the United States Sentencing Commission policy statements relating to the offenses of conviction.[21]  For the reasons provided by the Probation Officer in the PSR, which the United States adopts as its own, the United States avers that it is abundantly clear that the requested conditions are appropriate, reasonable, and necessary.  It requests the Court to so find, and to impose the conditions described.

The United States respectfully requests an additional special condition, as follows:

> The defendant shall not travel by commercial airline without the prior approval of the U.S. Probation Office.  Prior to boarding any commercial aircraft, the defendant shall ensure that the airline and the pilot in command of the aircraft are aware of the conviction in this case.

The justification for this condition is that the defendant has a history of misconduct on commercial aircraft and this condition is necessary to protect the traveling public and ensure that airlines can take sufficient precautions to protect their passengers and crew.

### D.  Conclusion.

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of incarceration at the high end of the Guideline Range

---

[21] *Id.* at 1236 (citations omitted).

found by the Court, a fine of $30,000, and a term of supervised release of 36

months subject to the Court's standard conditions and the special conditions

requested herein.

      DATED:    September 25, 2025.

                        FELICE JOHN VITI
                        Acting United States Attorney

                        /s/ *Michael Kennedy*

                        MICHAEL KENNEDY
                        Assistant United States Attorney

Notice of Service:

As a Restricted Document which will be unavailable by ECF, the United States
will provide service through alternate means to all notice parties upon filing.