# ATTACHMENT

# B

 **U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION
National Policy

 **ORDER 2150.3C**

Effective Date:
09/18/18

**SUBJ:** FAA Compliance and Enforcement Program

Order 2150.3C, which supersedes Order 2150.3B, sets forth policies and procedures relevant to the Federal Aviation Administration's compliance and enforcement program. The order applies to the compliance and enforcement programs and activities of all FAA offices that have statutory and regulatory compliance and enforcement responsibilities. It includes policies and procedures the FAA has developed since the last comprehensive revision of the order in 2007. Expired and out-of-date policies and procedures have been removed.

Order 2150.3C incorporates Order 8000.373 (Jun. 26, 2015), which sets forth overarching guidance for implementing FAA Compliance Oversight. Orders 2150.3C and 8000.373, and the policies and procedures issued by program offices, guide agency personnel in the exercise of prosecutorial discretion, including the use of compliance, administrative, and legal enforcement action, to best ensure that regulated persons conform their conduct to statutory and regulatory requirements.

In addition, Order 2150.3C provides a written statement of the Administrator's policy guidance for imposing sanctions for violations of statutory and regulatory requirements, and revises sanction guidance to implement the objectives of FAA Compliance Oversight and conform to Congressional directives on sanctions for hazardous materials, laser, and some unmanned aircraft system violations. The order provides guidance that addresses statutory changes resulting from the Pilot's Bill of Rights, Public Law 112-153. The order has been reorganized to be more useful for agency personnel.

A workgroup of agency personnel with extensive FAA compliance and enforcement experience assisted in the drafting of this comprehensive revision. Order 2150.3C is available electronically to agency personnel and the public.

Daniel K. Elwell
Acting Administrator

---

Distribution: Electronically

Initiated By: AGC-300

11/14/2022                                                                 2150.3C CHG 10

### Chapter 9. Legal Enforcement Action Sanction Policy

1. **Purpose.** This chapter contains the general guidance the FAA applies in selecting sanction types and ranges, and specific sanction amounts within ranges, for common violations of the FAA's statutes and regulations after the FAA deems legal enforcement action appropriate. The guidance in this chapter is applied to all FAA legal enforcement actions based on statutory and regulatory noncompliances occurring after the effective date of this order (except those concerning violations of the Hazardous Materials Regulations, which are addressed in chapter 10).[1]

2. **The FAA's Exercise of Prosecutorial Discretion.** The decision whether to prosecute a particular case is based on a review of the evidence and relevant law, policy, and litigation considerations. The FAA exercises broad discretion in the decision to bring a legal enforcement action and in any later case determinations, including whether to compromise or settle a case. The FAA's discretion in these areas is absolute and immune from review. *Heckler v. Cheney*, 470 U.S. 821, 831 (1985). The guidance in this chapter applies only to the selection of sanction after the FAA decides to take legal enforcement action.

3. **FAA Decisional Law.** Decisions of the FAA decisionmaker represent the FAA Administrator's position on issues regarding sanctions. The policy in this order also represents the Administrator's position on sanctions in legal enforcement actions. To the extent that this order conflicts with FAA decisionmaker decisions published before this document's issuance, the policy in this order supersedes those decisions. However, FAA decisionmaker decisions published after the issuance of this order that conflict with the policy in this order supersede this order and are controlling.

4. **Use of Punitive or Remedial Sanctions.** The FAA generally imposes sanctions for punitive and deterrent purposes and sanctions for remedial purposes. Sanctions for punitive and deterrent purposes are discussed below in paragraph 6, and include such sanction types as fixed-term certificate suspensions and civil penalties. Sanctions for remedial purposes are discussed below in paragraphs 7 and 8, and include such sanction types as revocations and indefinite suspensions. Punitive action is not a substitute when remedial action is necessary or appropriate. When warranted, the FAA may take both punitive and remedial action arising from the same matter.

5. **Sanction Selection.** Program offices select the type of legal enforcement action in accordance with this chapter and AGC-300 counsel assesses whether the type of legal enforcement action selected comports with this chapter. Counsel determines the specific sanction amount in punitive legal enforcement actions. To ensure that counsel makes an appropriate sanction amount determination, investigative personnel provide a detailed analysis for each factor affecting sanction (*e.g.*, severity level, culpability, business size, mitigating factors and aggravating factors) in section B of the Enforcement Investigative Report (EIR) with evidentiary support in section C of the EIR. Counsel applies the sanction polices in this chapter to determine the appropriate sanction amount based on an evaluation of the case. Counsel consults with

---

[1] For any statutory or regulatory noncompliance resulting in legal enforcement action occurring before the effective date of this order, enforcement personnel apply the sanction guidance in FAA Order 2150.3B and the statutory maximums in effect at the time of the violation.

9-1

11/14/2022                                                          2150.3C CHG 10

investigating or reviewing office personnel regarding sanction determinations in novel cases. For significant legal enforcement actions as described in chapter 8, paragraph 10, the Assistant Chief Counsel for AGC-300 or a delegee coordinates sanction determinations with appropriate headquarters officials. If a case is litigated, counsel provides the reasons for the sanction selected. Counsel's analysis of the sanction is based on the allegations in the complaint and evidence relating to the violation, including relevant factors affecting sanction. The sanction analysis, although based in part on evidence, is provided through argument by counsel, and is not itself evidence presented by counsel or investigative personnel. This argument may be presented, for example, by pre-trial motion, orally in closing following a hearing, and/or by brief following a hearing.

**6. Sanctions for Punitive and Deterrent Purposes.** The FAA imposes fixed-term certificate suspensions and civil penalties for punitive and deterrent purposes. The FAA does not typically take both types of punitive action against a certificate holder for the same conduct. If a certificate holder improperly exercises the privileges of a certificate in such a manner that legal enforcement action is warranted, a natural consequence of that act is to lose the privileges for a period of time commensurate with the violation. Balanced against this principle, the FAA considers the adverse impact that a certificate suspension could have on the public. Thus, the FAA generally suspends the certificates held by individuals for violations committed by those individuals. However, to prevent the disruption of service with potential adverse impact on the public, the FAA generally imposes civil penalties against certificated entities such as holders of air carrier, airport, and air agency certificates. The agency will nonetheless punitively suspend the certificate of any type of certificate holder when the FAA determines that safety considerations warrant such action.

**a. Sanction Determinations Based on Conduct**. Sanction determinations are based on conduct and primarily focus on acts that result in statutory or regulatory violations. A separate sanction is determined for each act resulting in a violation. When a single act results in multiple regulatory violations, the FAA ordinarily does not compound the sanction for each violation. Under 49 U.S.C. § 46301(a)(2), a separate violation occurs for each day the violation continues or, if applicable, for each flight involving the violation.

**b. Use of Punitive Sanction Guidance.** The sanction guidance in this paragraph provides a systematic process for use by AGC-300 counsel to arrive at an appropriate civil penalty. In performing this process, counsel are mindful that sanction determinations are not the result of a strict mathematical formula. Rather, sanction determinations result from a judgment of where a case lies along a spectrum of gravity. The circumstances of each case are evaluated in terms of the needs of safety and the public interest, and this guidance does not supplant the agency's judgment or its prosecutorial discretion in determining sanction.

(1) Sanction Range Determination. AGC-300 counsel uses the following process to identify the specific sanction range applicable to a single act resulting in a violation.

Step 1: Use the Table of Violations (Figure 9-9) to identify the severity level of the violation (paragraph 12).

**Step 2**: Identify the culpability of the violator (paragraph 6.d.).

**Step 3**: Use the Sanction Matrix (Figure 9-1) to identify a general sanction range (Low, Moderate, High, or Maximum) using the severity level of the violation and the culpability of the violator (paragraph 6.e.).

**Step 4**: Use the Sanction Ranges Table (Figure 9-2) to determine the specific sanction range using the general sanction range and the type of violator (paragraph 6.f.).

(2) Aggravating and Mitigating Factors. Once the applicable specific sanction range for an act of violation is identified, AGC-300 counsel consults paragraph 6.g., below, to assess aggravating and mitigating factors to determine the particular sanction within the range applicable to that act of violation. Counsel begins with a sanction at the midpoint of the applicable range and increases the sanction for aggravating factors and decreases the sanction for mitigating factors. In unusual circumstances, a sanction above or below the identified sanction range may be warranted by significant aggravating or mitigating factors.

**c.    Severity Levels (Step 1).** Statutes and regulations enforced by the FAA set the minimum acceptable level of conduct. This conduct is categorized into three levels that represent increasingly severe departures from safety or safety standards with Level 1 representing the least severe and Level 3 representing the most severe violations. AGC-300 counsel identifies the applicable severity level for conduct using the Table of Violations (Figure 9-9) and the guidance for this table in paragraph 12, below. The level of severity selected for violation conduct in the Table of Violations represents the severity of a generic violation. More severe departures are generally associated with an increased likelihood of harm to persons or property and, therefore, warrant a higher severity level. The determination of severity level for a kind of violation is based on the FAA's experience and expertise.

**d.    Culpability (Step 2).** The following definitions apply to the culpability levels represented in the Sanction Matrix.

*Careless.* A violation is careless when the violator's conduct falls below the standard of care expected of a reasonable person or certificate holder in the same or similar circumstances, but is not reckless or intentional. The statutes and regulations enforced by the FAA set the minimum acceptable level of conduct. Accordingly, all violations are at least careless.

*Reckless.* A violation is reckless when the violator's conduct demonstrates a gross disregard for or deliberate indifference to safety or a safety standard.

*Intentional.* A violation is intentional when the violator's conduct is deliberate and the violator knows that the conduct is contrary to statute or regulation, or is otherwise prohibited.

*Entity Culpability.* An entity (*e.g.,* a corporation or partnership) is liable for violations committed by its agents, contractors, and employees. An entity's level of culpability for a violation may

differ from that of the individual who committed the violation. In assessing an entity's culpability for a violation, AGC-300 counsel considers all facts and circumstances leading up to the violation. This includes consideration of the levels of participation, managerial responsibility, and knowledge of individuals involved in the actions or inactions resulting in the violation, as well as any prior notification to those individuals that such actions may result in noncompliance.

    e.   **The Sanction Matrix (Step 3).** The Sanction Matrix assigns general sanction ranges from Low to Maximum depending on the severity level of the apparent violation and the culpability of the violator for the violation. AGC-300 counsel determines the severity of the violation and the culpability of the violator, then uses the Sanction Matrix to identify the applicable general sanction range.

**Figure 9-1: Sanction Matrix.**

|  | **Careless** | **Reckless or Intentional** |
|---|---|---|
| **Severity Level 1** | Low | Moderate |
| **Severity Level 2** | Moderate | High |
| **Severity Level 3** | High | Maximum |

    f.   **Sanction Ranges Table (Step 4).** The Sanction Ranges Table assigns specific sanction ranges for civil penalties or certificate actions. Once AGC-300 counsel identifies a general sanction range (Low, Moderate, High, or Maximum) using the Sanction Matrix, counsel uses the Sanction Ranges Table to identify the specific sanction range for the category of violator.

**Figure 9-2: Sanction Ranges Table.**

|  | **Low** | **Moderate** | **High** | **Maximum** |
|---|---|---|---|---|
| Individual Certificate Holder | 20 - 60 days | 60 - 120 days | 90 - 150 days | 150 - 270 days |
| Individual Acting as an Airman (violations under 49 U.S.C. § 46301(a)(1)) | $100 - $400 | $400 - $700 | $700 - $1,100 | $1,100 - $1,828 |
| Individual (violations under 49 U.S.C. § 46301(a)(5)(A)) | $1,000 - $2,500 | $2,500 - $5,500 | $5,500 - $8,000 | $8,000 - $16,630 |
| Small Business or Individual (violations under 49 U.S.C. § 46301(a)(1) but not § 46301(a)(5)(A)) | $100 - $400 | $400 - $700 | $700 - $1,100 | $1,100 - $1,828 |
| Large Business | $3,000 - $9,500 | $9,500 - $20,500 | $20,500 - $28,500 | $28,500 - $41,577 |
| Small Business – Category I (violations under 49 U.S.C. § 46301(a)(5)(A)) | $1,000 - $2,500 | $2,500 - $5,500 | $5,500 - $8,000 | $8,000 - $16,630 |
| Small Business – Category II (violations under 49 U.S.C. § 46301(a)(5)(A)) | $1,000 - $3,500 | $3,500 - $6,500 | $6,500 - $9,500 | $9,500 - $16,630 |
| Small Business – Category III (violations under 49 U.S.C. § 46301(a)(5)(A)) | $1,000 - $4,500 | $4,500 - $7,500 | $7,500 - $10,000 | $9,500 - $16,630 |
| Small Business or Individual (violations under 49 U.S.C. § 46301(a)(5)(B)) | $1,000 - $3,500 | $3,500 - $6,500 | $6,500 - $9,500 | $9,500 - $16,630 |

09/09/2024                                                                2150.3C CHG 12

| | Low | Moderate | High | Maximum |
|---|---|---|---|---|
| UAS Interfering With Wildfire Suppression, Law Enforcement, or Emergency Response Under 49 U.S.C. § 46320 | \$15,000 - \$25,455 | | | |
| Operation of UAS equipped with dangerous weapon | \$20,000 - \$30,417 | | | |
| Individual Interfering with a Crewmember | \$1,000 - \$4,500 | \$4,500 - \$7,500 | \$7,500 - \$10,500 | \$10,500 - \$16,630 |
| Individual Interfering with a Crewmember – Laser | N/A | N/A | \$5,000 - \$10,000 | \$10,000 - \$31,819 |
| Passengers (tampering with smoke detector) | \$3,400 – 5,339 | | | |
| Passengers (smoking) | N/A | N/A | \$700 - \$1,100 | \$1,100 - \$1,828 |
| Passenger (physical assault or threat of physical assault of crew member or other individual on aircraft under 49 U.S.C. § 46318) | N/A | \$1,000 - \$5,000 | \$5,000 - \$10,000 | \$10,000 - \$20,000 |
| Passenger (sexual assault or threat of sexual assault of crew member or other individual on aircraft or posing imminent threat to safety of aircraft or the collective safety of other individuals under 49 U.S.C. § 46318) | N/A | N/A | \$10,000 - \$20,000 | \$20,000 - \$43,658 |
| Passengers (other violations) | \$1,000 - \$3,500 | \$3,500 - \$6,500 | \$6,500 - \$9,500 | \$9,500 - \$16,630 |
| Commercial Space | \$10,000 - \$50,000 | \$40,000 - \$125,000 | \$125,000 - \$175,000 | \$120,000 - \$292,181 |
| Knowing presentation of a nonconforming aircraft for issuance of initial airworthiness certificate by a production certificate holder under 49 U.S.C. § 44704(d)(3)(B) | Small Business Category I: \$200,000 - \$400,000<br>Small Business Category II: \$400,000 - \$600,000<br>Small Business Category III: \$600,000 - \$800,000<br>Large Business: \$800,000 - \$1,181,581 | | | |
| Knowing failure to submit safety-critical information for a transport category airplane by an applicant for or holder of a type certificate under 49 U.S.C. § 44704(e)(4) | Small Business Category I: \$200,000 - \$400,000<br>Small Business Category II: \$400,000 - \$600,000<br>Small Business Category III: \$600,000 - \$800,000<br>Large Business: \$800,000 - \$1,181,581 | | | |

(1) *Individual Certificate Holder, Individual Acting as an Airman, and Individual.*

(i)  An "Individual Certificate Holder" is an individual who holds a pilot, flight instructor, flight engineer, aircraft dispatcher, mechanic, mechanic with inspection authorization, repairman, parachute rigger, air traffic control tower operator, flight navigator, remote pilot, or

ground instructor certificate. The term "Individual Certificate Holder" does not include a flight attendant certificate of demonstrated proficiency.

(ii) "Individual Acting as an Airman" is an individual who acts as a pilot, flight instructor, flight engineer, aircraft dispatcher, mechanic, mechanic with inspection authorization, repairman, parachute rigger, air traffic control tower operator, flight navigator, or remote pilot regardless of whether they actually hold one of these certificates. The term "Individual Acting as an Airman" also includes non-certificated individuals performing supervised maintenance under 14 C.F.R. § 43.3(d).

(iii) An "Individual" is someone who is neither an Individual Certificate Holder nor an Individual Acting as an Airman, and includes passengers, flight attendants, and visual observers for small UAS operations. However, under 49 U.S.C. § 46301(a)(5)(B) an Individual does include an Individual Acting as an Airman, such as an uncertificated individual acting as remote pilot of an unregistered aircraft.

(2) Pursuant to 28 U.S.C. § 2461, Congress has provided a mechanism for inflation adjustments for civil penalties. Under the statute, the adjusted civil penalty maximums cannot be applied unless they are implemented by regulation. The adjusted civil penalty maximums are listed in 14 C.F.R. § 13.301. With the exception of "Passenger (physical assault or threat of physical assault of crew member or other individual on aircraft under 49 U.S.C. § 46318)," the high end of the Maximum civil penalty ranges listed in the Sanction Ranges Table corresponds to the applicable maximum authorized penalties as of the regulatory adjustment of December 28, 2023. Regardless of the maximums listed in Sanction Ranges Table, the applicable civil penalty maximum for a violation is the maximum that was listed in 14 C.F.R. § 13.301 on the date of the violation.

(3) The FAA is authorized to assess a maximum civil penalty under 49 U.S.C. § 46301(a)(1)(A) of $25,000 (as adjusted) against someone other than an individual or small business concern, and $1,100 (as adjusted) against an individual or small business concern, for violating the provisions in 49 U.S.C. § 46301(a)(1)(A) or regulations authorized under those provisions. Under 49 U.S.C. § 46301(a)(5)(A), the FAA is authorized to assess a penalty of $10,000 (as adjusted) for violating the provisions in 49 U.S.C. § 46301(a)(5)(A)(i) (or regulations authorized under those provisions) against a small business concern or an individual, except an individual acting as an airman. If the violation by an individual or small business is of a provision that is referenced in 49 U.S.C. § 46301(a)(1)(A) (or regulation authorized by that provision) but not 49 U.S.C. § 46301(a)(5)(A) (such as a smoking violation), the civil penalty is limited to $1,100 (as adjusted). If the violation is of a provision that is referenced in both 49 U.S.C. § 46301(a)(1)(A) and (a)(5)(A)(i) (or regulation authorized by that provision), the only time the civil penalty is limited to $1,100 (as adjusted) is when the violation is by an individual acting as an airman. *See* 71 Fed. Reg. 28518, 28519 (May 16, 2006) (http://federalregister.gov).

(4) When an act resulting in a violation would be covered by more than one row in the Sanction Ranges Table, such as interfering with a crewmember and physical assault or threat of physical assault of crew member or other individual on aircraft under 49 U.S.C. § 46318, whichever row would produce the higher sanction range for that act applies.

11/14/2022                                                                 2150.3C CHG 10

(5) *Knowing Violations of 49 U.S.C. §§ 44704(d)(3)(A) and (e)(1)-(3).* Under 49 U.S.C. § 44704(d)(3)(C) and (e)(4)(B), the FAA considers the following factors in assessing civil penalties for the knowing presentation of a nonconforming aircraft for issuance of an initial airworthiness certificate by a production certificate holder (49 U.S.C. §§ 44704(d)(3)(A)), and the knowing failure to submit safety critical information for a transport category airplane by an applicant for or holder of a type certificate (49 U.S.C. §§ 44704(e)(1)-(3)): (i) the nature, circumstances, extent, and gravity of the violation, including the length of time the nonconformity of safety-critical information was known but not disclosed; and (ii) with respect to the violator, the degree of culpability, any history of prior violations, and the size of the business concern. Figure 9-2 provides ranges reflecting the gravity (*i.e.*, severity) and degree of culpability, and incorporating business sizes, for these violations. AGC-300 counsel considers the other factors to determine the appropriate penalty within the ranges.

g.    **Mitigating and Aggravating Factors.** The following factors are used to determine the appropriate penalty within a specific sanction range. Not all factors will apply to all cases. The list of factors below is not exhaustive, and other factors may be relevant as well. AGC-300 counsel selects a sanction for a single act by starting at the middle of the range, with aggravating factors increasing the sanction within the range and mitigating factors reducing the sanction within the range. In certain circumstances, aggravating factors may indicate a lack of qualifications requiring remedial action, as discussed in paragraph 8, below. An apparent violator has the burden of proving the applicability of any given mitigating factor; the FAA does not have the burden of proving the nonexistence of a mitigating factor.

(1) *Degree of Hazard.* The severity level for violation conduct in the Table of Violations represents a generic violation of that type. Each violation, however, represents its own unique circumstances. The degree of hazard may be a mitigating or aggravating factor. The degree of hazard is affected by the precise nature of the conduct forming the violation (*e.g.*, the extent of the deviation from an altitude requirement or the extent of the overflight of a required inspection) and other factors potentially impacting the violation, including those in the operational environment (*e.g.*, traffic congestion, weather conditions). The degree of hazard is based on the reasonably foreseeable consequences of the misconduct. Whether the violation results in actual harm (or whether a missed inspection would have detected a problem) is fortuitous, and is neither mitigating nor aggravating. Actual harm, however, could serve as evidentiary support for a determination as to the reasonably foreseeable consequences of violation conduct. As noted in paragraph 12.a., below, in unusual circumstances, the degree of hazard presented may warrant selection of a different severity level than the level identified in the table.

(2) *Violation History.* A violation history is an aggravating factor. A violation-free history is the expected norm, not a mitigating factor.

(i)  A violation history often justifies imposing a sanction at the higher end of the normal range. A significant violation history, such as multiple careless violations in the past five years or a prior violation involving reckless or intentional conduct, may warrant a sanction above the identified sanction range. It might also justify revocation rather than suspension if the pattern of violation reflects a lack of qualification. A violation history might justify a certificate suspension against an entity if previously issued civil penalties have not produced the desired

deterrent effect. In deciding the extent and nature of the aggravation applied, the FAA considers such factors as the length of time that has elapsed between violations, whether the violations involved the same or similar regulations, and whether the violations are factually similar.

(ii) The following actions constitute a violation history when they involve statutory or regulatory violations and have become final: orders of amendment, modification, suspension, or revocation of an FAA certificate, rating, authorization, approval, license, or permit; orders assessing a civil penalty; findings of violation contained in a consent order, order of compliance or denial; and findings of violation made by a federal court. In addition, a party may agree as part of a settlement of a case initiated by a civil penalty letter that the FAA may consider violations alleged in the civil penalty letter as findings of violation for future sanction determinations.

(3) *Level of Certificate and Experience.* Certificate holders with a higher level of certificate as well as those with more experience are held to a higher standard of safety. The level of certificate held and amount of experience serve only as aggravating factors. Note that in addition to serving as an aggravating factor, the level of certificate held by a violator and the violator's overall experience may be relevant in assessing whether a violation rose to the level of reckless or intentional conduct.

(i)  Holders of a higher level of certificate are held to a higher standard. For example, commercial pilots are held to a higher standard than private pilots and airline transport pilots are held to an even higher standard than commercial pilots. Similarly, a mechanic who is the holder of an inspection authorization is held to a higher standard than a mechanic who is not. Air carrier certificate holders and their personnel are held to the highest standard of safety.

(ii) Certificate holders with more experience are held to a higher standard. For example, a pilot with 2,000 hours will be held to a higher standard than a pilot with 200 hours. A commercial operator that has held its certificate for ten years will be held to a higher standard than a newly certificated operator.

(4) *Compliance Disposition of Violator.* The attitude of a violator is largely accounted for in the determination of the violator's culpability. However, a violator may demonstrate a poor compliance disposition through acts or omissions prior to or following the violation. In such a circumstance, a poor compliance disposition is an aggravating factor. Acts demonstrating a poor compliance disposition may include a history of noncompliance that has not resulted in a violation history. For example, a violator may evidence a poor compliance attitude when the violator has been previously notified through compliance or administrative action that conduct similar to that at issue in the current case was in violation of the regulations. Further, knowingly providing false or misleading information to FAA investigators evidences a poor compliance disposition. A refusal to provide records as required under FAA regulations during an investigation may also show a poor compliance disposition. In evaluating compliance disposition, the FAA does not view a violator as having a poor attitude because the violator does not respond to a letter of investigation, chooses to be represented by counsel, or contests the violation. A positive compliance attitude is the norm and is not a mitigating factor.

11/14/2022                                                                    2150.3C CHG 10

(5) *Systemic/Isolated Violations*. Violations of a systemic nature warrant aggravation. Systemic violations involve repeated noncompliance with the same or similar regulations or otherwise demonstrate an underlying deficiency in a violator's system, practices, or procedures. Systemic violations indicate a need for corrective action. In contrast, isolated violations involve a single instance of failing to follow a statutory or regulatory requirement, or multiple unrelated instances of noncompliance. That violations are isolated is not mitigating.

(6) *Corrective Action.* Corrective action is a mitigating factor when it exceeds regulatory or statutory requirements, corrects the underlying violation, and is designed to prevent future violations. The significance of corrective action as a mitigating factor is determined by the timeliness of the action (*e.g.*, before FAA discovery of the violation, after discovery but before legal enforcement action is initiated, or after legal enforcement action is taken) and how extensive it is. Prompt corrective action ordinarily warrants greater mitigation than delayed corrective action. Systemic change intended to prevent future violations should be given greater mitigation consideration. Corrective action that simply places the violator in compliance with the regulations is not a mitigating factor.

(7) *Inadvertence.* Inadvertence, a type of carelessness that involves lesser culpability than other careless violations, is a mitigating factor. A violation is inadvertent when it is the result of both inattention and a lack of purposeful choice. A violation is not inadvertent if it results from the violator's conscious decision to take or not take any action that could have prevented the violation. For example, a violation is inadvertent if a pilot flies at an incorrect altitude because the pilot misreads the aircraft's instruments.

(8) *Voluntary Reporting of Violations.* A violator's voluntary reporting of a violation committed by the violator may be a mitigating factor if the violator reports the violation before the FAA discovers the violation and the violator works with the FAA to correct the noncompliance and prevent its recurrence. This mitigating factor also applies when the violator discloses another person's violation to the FAA and in so doing discloses the violator's own violation. This factor does not apply when the violator is covered by a distinct FAA voluntary disclosure program.

(9) *Criminal Conviction.* When a violator has been criminally convicted for the same conduct that forms the basis of the violation, the FAA may consider the criminal conviction, and the penalties imposed for that conviction, as a mitigating factor. The FAA generally takes remedial action if warranted despite the criminal prosecution.

h.  **Employment Discipline.** Actions taken by a violator's employer are not: (1) a consideration in determining whether to take legal enforcement action; (2) a mitigating factor in determining sanction; and (3) credited towards any period of suspension.

i.  **General Guidance on Multiple Acts.** Legal enforcement actions often involve multiple acts resulting in violations. Ordinarily, the sanction in these cases is determined by adding the individual penalties for each act. However, this may produce a sanction that is disproportionately harsh for the conduct involved and, in such cases, AGC-300 counsel will reduce the sanction to a level proportionate to the facts and circumstances of the case. In contrast, some cases may be so

serious as to require a sanction greater than the sum of the penalties for each act or may indicate a lack of qualification requiring remedial action. Some particular circumstances of multiple acts of violation are given special consideration, as described in paragraph 6.j., below.

**j.   Special Consideration for Certain Multiple Acts.** To prevent disproportionately high sanctions, the special consideration policy sets limits in cases involving multiple acts resulting in multiple violations that stem from an initial act or omission, or by companies that violate Antidrug and Alcohol Misuse Prevention Program regulations. Special consideration is given only for careless violations. Special consideration is not given for reckless or intentional violations. The special consideration policy does not limit the penalty amount the government may seek in a U.S. district court for a civil penalty case in excess of the assessment authority limits in 49 U.S.C. § 46301(d)(8).

(1) To determine the appropriate penalty in a case when the special consideration policy may apply, AGC-300 counsel uses the lesser of either: (i) the sum of the penalties for all acts resulting in violations calculated under paragraph 6.a.-g., above; or (ii) the special consideration sanction.

(2) *Special Consideration Sanction for Multiple Acts Resulting From an Initial Act or Omission.* Special consideration may be given for multiple acts that violate regulations resulting from an initial act or omission. For example, the special consideration policy may apply when an air carrier improperly performed aircraft maintenance and then operated the aircraft numerous times in an unairworthy condition. This policy does not apply to commercial space violations. To determine the special consideration penalty for these cases, AGC-300 counsel uses the following process.

(i)  Determine a penalty for the initial act or omission (if a violation) under paragraph 6.a.-g., above.

(ii) For the resulting multiple acts, use Figure 9-3 to determine the applicable sanction range given the category of violator and the applicable severity level. If a case involves resulting multiple acts with different severity levels, AGC-300 counsel uses the highest of those severity levels.

(iii)Consider aggravating and mitigating factors to determine the appropriate penalty within the applicable range.

(iv)Add the penalty for the initial act or omission (if a violation) to the penalty for the resulting multiple acts.

11/14/2022                                                          2150.3C CHG 10

**Figure 9-3: Numerous Violations Resulting From a Single Act or Omission Special Consideration Sanction Ranges Table**

|  | Severity Level 1 | Severity Level 2 | Severity Level 3 |
|---|---|---|---|
| Individual Certificate Holder | 30 - 90 days | 90 - 150 days | 120 - 180 days |
| Individual Acting as an Airman | $5,000 - $10,000 | $7,500 - $15,000 | $10,000 - $20,000 |
| Individual | $50,000 - $100,000 | $75,000 - $150,000 | $100,000 - $200,000 |
| Small Business – Category I | $50,000 - $100,000 | $75,000 - $150,000 | $100,000 - $200,000 |
| Small Business – Category II | $75,000 - $150,000 | $100,000 - $200,000 | $125,000 - $250,000 |
| Small Business – Category III | $100,000 - $200,000 | $150,000 - $300,000 | $200,000 - $400,000 |
| Large Business | $200,000 - $400,000 | $300,000 - $500,000 | $400,000 - $600,000 |

(3) *Special Consideration Sanction for Drug and Alcohol Testing.* Special consideration may be given for the six types of drug and alcohol testing violations in Figure 9-4 by companies that have, or are required to have, an Antidrug and Alcohol Misuse Prevention Program. To determine the special consideration penalty for these type of violations, AGC-300 counsel uses the following process.

(i)  Use Figure 9-4 to determine the applicable sanction range given the type of violation and the size of the violator.

(ii) Consider aggravating and mitigating factors to determine the appropriate penalty within the applicable range.

(iii)If more than one type of violation is present in a case, determine whether to give special consideration separately to each type.

**Figure 9-4: Drug and Alcohol Testing Special Consideration Sanction Ranges Table**

|  | Category I Small Business | Category II Small Business | Category III Small Business | Large Business |
|---|---|---|---|---|
| Type A: Pre-Employment (performance) | $15,000 - $45,000 | $40,000 - $90,000 | $45,000 - $95,000 | $145,000 - $290,000 |
| Type B: Pre-Employment (no performance) | $5,000 - $12,000 | $15,000 - $30,000 | $20,000 - $40,000 | $45,000 - $90,000 |
| Type C: Return-to-Duty/Follow-Up Testing | $35,000 - $55,000 | $55,000 - $135,000 | $75,000 - $150,000 | $170,000 - $340,000 |
| Type D: Failure to Include in Random Pool | $15,000 - $45,000 | $40,000 - $90,000 | $45,000 - $95,000 | $145,000 - $290,000 |

11/14/2022                                                                          2150.3C CHG 10

|  | Category I Small Business | Category II Small Business | Category III Small Business | Large Business |
|---|---|---|---|---|
| Type E: Drug and Alcohol Records Check (performance) | $7,000 - $12,000 | $12,000 - $20,000 | $12,000 - $22,000 | $25,000 - $50,000 |
| Type F: Failure to Implement | $35,000 - $55,000 | $55,000 - $135,000 | $75,000 - $150,000 | $170,000 - $340,000 |

k.   **Sanctions for Failure to Surrender.** When an FAA-issued certificate is revoked, suspended, or denied (*e.g.*, where the FAA reverses the issuance of an airman medical certificate), the certificate holder or applicant is required to surrender the certificate to the FAA. Failure to do so is a continuing violation that subjects the violator to a new civil penalty every day. However, the applicable ranges for failure to surrender ordinarily are as follows: $5,000-$11,000 for an individual; $11,000-$25,000 for a small business; and $27,500-$60,000 for a large business.

l.   **Ability to Absorb Sanction/Economic Impact.** While the FAA does not allow financial circumstances to excuse any violation, it considers a violator's financial strength in choosing an appropriate sanction amount. This is, to some extent, taken into account by the different sanction ranges applicable to different kinds of businesses. In addition to the application of these ranges, the FAA considers an individual or entity's ability to pay a civil penalty and the effect a civil penalty will have on a person's ability to continue in business to the extent the FAA knows such information. Consideration of ability to pay does not justify refraining from legal enforcement action, making a finding of violation, or imposing a sanction. Consideration of ability to pay, while a factor that may move a sanction outside of the applicable range, remains only one factor – it is not an absolute defense to the imposition of a sanction. In appropriate circumstances, the FAA may decide to not reduce a penalty even if the penalty will have a significant impact on a person's ability to continue in business.

7.   **Mandatory Certificate Actions.** Several statutory provisions require the FAA Administrator to take certain certificate actions in certain specified circumstances.

a.   **Mandatory Revocations.** The Administrator is required to revoke certificates under 49 U.S.C. §§ 44710 ("Revocations of airman certificates for controlled substance violations"); 44106 ("Revocation of aircraft certificates for controlled substance violations"); 44726 ("Denial and revocation of certificate [issued under 49 U.S.C. chap. 447] for counterfeit parts violations"); 44724 (revocation of pilot certificate held by an individual who knowingly allows an non-certificated individual to control an aircraft to set a record or engage in an aeronautical competition or feat ); and 44704(e)(5)(A) (revocation of airline transport pilot certificate for knowingly making a false statement regarding safety critical type certificate-related information). These statutes are discussed in detail in chapter 7, paragraph 4.b., c., and d.

b.   **Mandatory Certificate Action for Security Concerns.** When notified by the Transportation Security Administration (TSA), the Administrator is required to amend, modify, suspend, or revoke any certificate under 49 U.S.C. § 46111 ("Certificate actions in response to a security threat") and 14 C.F.R. § 3.200, and suspend or revoke foreign repair station certificates

11/14/2022                                                                2150.3C CHG 10

under 49 U.S.C. § 44924 ("Repair station security"). These statutes are discussed in detail in chapter 7, paragraph 4.e. and f.

**8.   Determining Sanctions for Remedial Purposes.** Remedial legal enforcement action involves the revocation or indefinite suspension of FAA-issued certificates, ratings, approvals, authorizations, licenses, or permits (collectively referred to in this paragraph as certificates unless otherwise specified).

   **a.   Revocations.**

      (1) *General Guidance:* Revocation is appropriate whenever the certificate holder lacks the qualifications to hold a certificate. A certificate holder may lack the qualifications to hold a certificate because of (1) a lack of technical proficiency; (2) the failure to meet technical eligibility requirements (including airman medical standards); or (3) a lack of the care, judgment, or responsibility required of a certificate holder. The certificate holder's continued exercise of the privileges of the certificate in such circumstances would be contrary to safety in air commerce or air transportation and the public interest. A lack of qualifications may be demonstrated by a pattern of conduct or by a single event.

      (2) *Scope of Certificates Revoked When a Certificate Holder Demonstrates a Lack of Care, Judgment, or Responsibility.*

         (i)  Not only is revocation appropriate for conduct demonstrating a lack of care, judgment, or responsibility, the scope of the certificates affected by the revocation generally includes all certificates held regardless of which certificate (if any) was used at the time of the conduct. Such conduct may be evidenced by either a single act or repeated noncompliance. Airman medical certificates are not included in the scope of revoked certificates unless the conduct also evidences a lack of qualifications to meet airman medical certification standards, or involves a drug or alcohol violation, or intentional falsification or fraudulent conduct. For example, when an individual who holds pilot, remote pilot, mechanic, and medical certificates conducts an operation that reflects a lack of lack of care, judgment, or responsibility (but does not demonstrate a lack of qualification to meet airman medical certification standards or involve a drug or alcohol violation), revocation of the pilot, remote pilot, and mechanic certificates is generally appropriate regardless of which certificate (if any) was used for the operation.

         (ii) For certain violations demonstrating a lack of care, judgment, or responsibility, the scope of certificates affected is dictated by statute or regulation. For example, the scope of certificates affected by making a fraudulent or intentional false statement on an application for an airman medical certificate in violation of 14 C.F.R. § 67.403 is broad; this regulation provides a basis to revoke all airman (including medical) and ground instructor certificates. Further, an intentional falsification on an application for a certificate issued under 14 C.F.R. part 61 is a basis for revoking any airman certificate, rating, or authorization. In contrast, operating an aircraft while under the influence of alcohol in violation of 14 C.F.R. § 91.17(a)(2) is a basis for revocation, but 14 C.F.R. § 61.15(b) limits the scope of the revocation to certificates issued under 14 C.F.R. part 61.

11/14/2022                                                                                    2150.3C CHG 10

(3) *Egregious Conduct*. In some cases, an airman's deliberate conduct during one event (*e.g.*, a single act, multiple acts during a single flight, or multiple flights in succession) may be so egregious that it demonstrates that the respondent lacks the care, judgment, or responsibility required of a certificate holder. In such a case, revocation of airman and ground instructor certificates is appropriate. For example, revocation would be warranted when: (i) a pilot continues a flight under 14 C.F.R. part 121 at high altitude to the intended destination despite the deployment of passenger oxygen masks and the depletion of oxygen supplies; (ii) a pilot conducts low high speed passes and aerobatics in a congested area; or (iii) a pilot executes longitudinal rolls in an aircraft used in 14 C.F.R. part 135 operations on several repositioning flights.

(4) *Repeated Noncompliance.* Repeated noncompliance may demonstrate a lack of qualifications. The FAA may revoke a certificate when a certificate holder's repeated noncompliance can no longer be sufficiently addressed through punitive sanctions.

(5) *Single Acts of Misconduct Generally Warranting Revocation.* Some acts of misconduct are, by their very nature, so egregious or significant as to demonstrate that the certificate holder does not possess the care, judgment, or responsibility to hold a certificate. These acts include, but are not limited to, those listed in Figure 9-5. AGC-300 counsel coordinates any decision to seek a sanction other than revocation with the Assistant Chief Counsel for AGC-300 and documents the basis for the decision in the case file. If it is necessary to impose a punitive sanction for such a violation (*e.g.*, because the violator does not hold a certificate), then a Maximum range penalty is applied.

**Figure 9-5: Single Acts Generally Warranting Revocation**

| **Intentional Falsification and Fraudulent Conduct** |
| --- |
| (1) Fraudulent or intentionally false statement |
| (2) Fraudulent or intentionally false alteration or reproduction |
| (3) Cheating on any required test or check |
| (4) Intentionally false endorsement of any student pilot record |
| (5) Intentional improper crediting or graduation of a student |
| (6) Improper removal of, changing, or placing an identification plate or identification information on a product with the intent to misrepresent the identity of the product |
| (7) Intentionally false or misleading statements when conveying information related to an advertisement or sales transaction about products, parts, appliances, and materials |
| (8) Knowing omission or concealment of a material fact |
| (9) Transmitting inaccurate ADS-B information with the intent to deceive |
| **Drugs and Alcohol** |
| (10) Acting or attempting to act as a flight crewmember while under the influence of alcohol or drugs, with an alcohol concentration of .04 or above, or within eight hours of consuming alcohol |
| (11) Refusing to submit to a drug or alcohol test |
| (12) Performing a safety-sensitive function with a prohibited drug in system |
| (13) Reporting or remaining on duty to perform safety-sensitive function with alcohol concentration of .04 or above |

11/14/2022                                                                        2150.3C CHG 10

| |
|---|
| (14) Failure of an individual to disclose to a medical review officer (MRO) or substance abuse professional (SAP) that the individual holds an airman medical certificate, or would be required to hold such certificate, to perform the duties of the position for which the individual is applying |
| (15) Performing a safety-sensitive function for an employer without complying with required return-to-duty procedures |
| (16) Performing a safety-sensitive function for an employer while having an alcohol concentration of .04 or above, within the prohibited time after consumption of alcohol, or while using alcohol or drugs |
| (17) Using alcohol within eight hours following an aircraft accident when having actual knowledge of the accident and having performed a safety-sensitive function at or near the time of the accident |
| (18) Three motor vehicle actions (as defined by 14 C.F.R. § 61.15(c)) arising from separate incidents within three years |
| **Activity Related to Controlled Substances** |
| (19) Operating an aircraft with knowledge that illegal controlled substances are carried in the aircraft or allowing an aircraft to be operated under such circumstances |
| (20) Drug conviction(s) for other than simple possession (unless the conviction(s) are more than five years old when discovered by the FAA and there is evidence that the certificate holder has been rehabilitated such that the individual can be expected to conform to safety standards) |
| **Student Pilot Operations** |
| (21) Passenger-carrying operation by a student pilot |
| (22) Operation for compensation or hire by a student pilot |
| **Other** |
| (23) Significant failure of an inspection authorization (IA) holder to accomplish an inspection properly (revocation of IA rating only) |
| (24) Aiming a laser beam so that it interferes with the operation of an aircraft |
| (25) Incorrect (but not intentionally false) statement on a medical application (medical certificate only) |
| (26) Exercising the privileges of a certificate while that certificate is suspended |
| (27) Lack of good moral character (airline transport pilot certificate only) |
| (28) Operating with a known disqualifying medical condition or when application for medical certificate deferred or denied |
| (29) Operating an aircraft without activated transponder or ADS-B Out transmission (except as provided in 14 C.F.R. § 91.225(f)) for purposes of evading detection |

(6) *Unsuccessful Reexamination.* An unsuccessful reexamination demonstrates a lack of qualifications to hold a certificate or rating. Revocation of a certificate or rating is warranted when an airman submits to an initial reexamination, is unable to demonstrate technical proficiency, and does not promptly place the certificate or rating on deposit with the FAA or voluntarily surrender the certificate or rating. Generally, the FAA revokes an airman certificate or rating when an airman has failed both an initial and second reexamination. Revocation is also warranted when an airman submits to an initial reexamination and is unable to demonstrate qualifications for reasons other than for technical proficiency *See* chapter 7, paragraph 6 for a detailed guidance on reexaminations.

**b.  Indefinite Suspensions.** The FAA may suspend a certificate indefinitely when the FAA has reason to question, but is unable to determine, the certificate holder's qualifications, or when the certificate holder does not comply with statutory or regulatory requirements to cooperate with the FAA. In such circumstances, the FAA may suspend the certificate until it has been determined that the certificate holder is qualified or until the certificate holder complies with its obligation to cooperate with the FAA. Circumstances where an indefinite suspension is imposed include, but are not limited to, those listed in Figure 9-6.

**Figure 9-6: Circumstances Generally Warranting Indefinite Suspension**

| |
|---|
| (1) Failure to comply with a request for reexamination of airman competency |
| (2) Failure to comply with a request for reinspection of the airworthiness of an aircraft |
| (3) Failure to comply with a request for additional medical information |
| (4) Failure to produce aircraft records, such as maintenance records like those required to be kept by the owner |
| (5) Failure to produce airman records, such as airman certificates or pilot logbooks |
| (6) Failure to produce records that an entity is required to keep and/or produce to the FAA, such as training, maintenance, flight or duty, or anti-drug or alcohol misuse prevention program records |
| (7) Failure to permit access to facilities that an entity is required to permit the FAA to inspect |
| (8) Refusal to permit test, check, or examination of student |
| (9) Imposing any prohibition, condition, restriction, or penalty with respect to contact between an employee of Organization Designation Authorization (ODA) holder and the FAA regarding aircraft design or production |

**c.  Emergency Nature of Remedial Actions.** Remedial actions are taken on an emergency basis when: (1) the certificate holder lacks qualifications, there is a reasonable basis to question whether the certificate holder is qualified to hold the certificate, or the certificate holder does not comply with statutory or regulatory requirements to cooperate with the FAA; and (2) the certificate holder is reasonably able to exercise the privileges of the certificate. *See* chapter 8, paragraph 13, for more information on criteria for emergency action.

**d.  Remedial Sanctions Do Not Preclude Punitive Sanctions.** In some circumstances when the FAA takes remedial action, a punitive sanction may also be appropriate. For example, when the remedial action is an indefinite suspension arising from a violator's refusal to comply with an FAA inspection or record production request, punitive action may also be appropriate. The FAA generally does not pursue punitive sanctions in addition to remedial sanctions: (1) based on an airman's failure to appear for a re-examination or to produce additional medical information; or (2) when only revoking an airman or ground instructor certificate. The FAA, however, may pursue a punitive civil penalty against an entity whose certificate is revoked.

**9.  Special Emphasis Enforcement Programs.** At times, special situations arise that dictate the need for heightened legal enforcement action through increased sanctions or other measures in a particular regulated area or segment of industry. When these circumstances arise, the FAA may establish a special emphasis enforcement program designed to focus on a particular area of

noncompliance on a national or local geographical basis. Special emphasis enforcement programs may differ from the general guidance provided in this chapter.

**10. Violations by Members of the U.S. Armed Forces.** When a member of the U.S. Armed Forces apparently commits a violation while acting in the performance of official duties, 49 U.S.C. § 46101(b) requires the FAA to forward reports of such violations to the Secretary of the department concerned. However, the FAA may also take remedial action against a member of the U.S. Armed Forces, even if the individual was acting in performance of official duties, if the individual's actions demonstrate or raise a question concerning a lack of qualification to hold an FAA-issued certificate. The FAA does not take punitive action against a member of the U.S. Armed Forces for a violation committed when the member is performing official duties. The FAA may take punitive or remedial action against a member of the U.S. Armed Forces for a violation committed when the member is not performing official duties.

**11. Penalties for Small Businesses.**

    **a.  Introduction.** If an entity meets the definition of a *small business,* the FAA will determine the civil penalty using the applicable range as set forth in Figure 9-2 (or Figures 9-3 or 9-4 if applicable). Lower civil penalty maximums apply to small businesses as compared to other entities.

    **b.  Definition of Small Business.** The term "small business" as used in this order means a "small business concern" under 49 U.S.C. § 46301(i), which is defined under the Small Business Act (15 U.S.C. § 632), as interpreted by the Small Business Administration (SBA). A small business is a business entity: (1) "organized for profit, with a place of business located in the U.S., and which operates primarily within the U.S. or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor"; (2) "which is independently owned and operated and which is not dominant in its field of operation"; and (3) that meets the size standards specified by the SBA. *See* 15 U.S.C. § 632; 13 C.F.R. §§ 121.101 and 121.105.

    **c.  Size Limits for Small Businesses.** The SBA defines small business concerns in tables according to the economic activity or industry in which they are primarily engaged (generally according to the North American Industry Classification System (NAICS)) and number of employees or annual receipts. These limits are set by the SBA and can be found at 13 C.F.R. § 121.101. The SBA provides guidance on affiliates (13 C.F.R. § 121.103), calculating annual receipts (13 C.F.R. § 121.104), and calculating the number of employees (13 C.F.R. § 121.106). Limits for some common aviation entities are listed in Figure 9-7. If a business is engaged in more than one industry, AGC-300 counsel determines the primary industry in accordance with 13 C.F.R. § 121.107.

**Figure 9-7: Small Business Maximum Size Limits**

| Business Subsector/Business Type (with NAICS code) | Size Limit |
|---|---|
| **Computer and Electronic Manufacturing** (Subsector 334) | |
| Search, Detection, Navigation, Guidance, Aeronautical, and Nautical System, and Instrument Manufacturing (334511) | 1,350 employees |

09/09/2024                                                                                2150.3C CHG 12

| Business Subsector/Business Type (with NAICS code) | Size Limit |
|---|---|
| **Transportation Equipment Manufacturing** (Subsector 336) | |
| Aircraft Manufacturing (336411) | 1,500 employees |
| Aircraft Engine and Engine Parts Manufacturing (336412) | 1,500 employees |
| Other Aircraft Part and Auxiliary Equipment Manufacturing (336413) | 1,250 employees |
| **Air Transportation** (Subsector 481) | |
| Scheduled Passenger Air Transportation (481111) | 1,500 employees |
| Scheduled Freight Air Transportation (481112) | 1,500 employees |
| Nonscheduled Chartered Passenger Air Transportation (481211) | 1,500 employees |
| Nonscheduled Chartered Freight Air Transportation (481212) | 1,500 employees |
| Other Nonscheduled Air Transportation (481219) | $25million annual receipts |
| **Scenic and Sightseeing Transportation (Subsector 487)** | |
| Scenic and Sightseeing Transportation, Other (other than land or water) (487990) (includes air tour operators) | $25 million annual receipts |
| **Support Activities for Transportation** (Subsector 488) | |
| Other Airport Operations (other than Air Traffic Control) (488119) (includes airport operators) | $40 million annual receipts |
| Freight Transportation Arrangement (488510) (includes freight forwarders for hazmat sanction calculations) | $20million annual receipts |
| *Except* Non-Vessel Owning Common Carriers and Household Goods Forwarders | $34 million annual receipts |
| Other Support Activities for Air Transportation (488190) (includes repair stations) | $40 million annual receipts |
| **Educational Services** (Subsector 611) | |
| Flight Training (611512) | $34.0 million annual receipts |

d. **Definition of Large Business.** The term "large business" is not defined in a statute or regulation relevant to FAA legal enforcement actions. As used in this order, a large business is any entity that does not meet the definition of a small business concern. However, an entity that is not a "small business concern" only because it is a not organized for profit will be treated, for purposes of sanction selection, as a small business. This does not affect which statutory maximum is applicable to the entity.

e. **Categorization of Small Businesses.** The FAA's sanction ranges take into consideration a wide range of businesses that fall into the definition of a "small business." Accordingly, the FAA divides small businesses into several categories for purposes of the sanction guidance in this chapter. Small businesses are placed in three categories that represent the size of the business, with Category I representing the smallest and Category III representing the largest. Common aviation businesses are categorized by the number of aviation personnel they employ or aircraft they have available, as detailed in Figure 9-8. If a particular type of business is not listed in the table, AGC-300 counsel refers to analogous or similar business types for guidance.

**Figure 9-8: Small Business Size Category Limits**

| Type of Business | Type and Maximum Number of Personnel or Aircraft | | |
|---|---|---|---|
| | Category I | Category II | Category III |
| Air Carrier or Commercial Operator | 1-5 pilots and 1-5 aircraft on operations specifications | 6-49 pilots or 6-24 aircraft on operations specifications | 50 or more pilots and 25 or more aircraft on operations specifications |
| Flight School/Pilot School | 1-5 instructors and 1-5 aircraft on operations specifications | 6-49 instructors or 6-24 aircraft on operations specifications | 50 or more instructors and 25 or more aircraft on operations specifications |
| Repair Station | 1-5 persons authorized to perform maintenance | 6-49 persons authorized to performance maintenance | 50 or more persons authorized to perform maintenance |
| Training Center/Aviation Maintenance Technician Schools | 1-5 instructors | 6-49 instructors | 50 or more instructors |
| Airports | 1-5 employees | 6-49 employees | 50 or more employees |
| Manufacturers | 1-5 employees | 6-49 employees | 50 or more employees |

**12. Table of Violations.** The Table of Violations (Figure 9-9) is used when establishing severity levels for punitive sanctions, as referenced in paragraph 6.c., above.

   **a.   General.** The level of severity selected for violation conduct in the Table of Violations represents the severity of a generic violation. The determination of severity level for a kind of violation is based on the FAA's experience and expertise. In unusual circumstances, the severity level for a particular violation may be higher or lower than the level identified in the table. If violation conduct is not included in the Table of Violations, enforcement personnel refer to analogous violation conduct listed. In the absence of analogous conduct listed, enforcement personnel determine the severity of departure from safety or a safety standard considering the specific facts and circumstances surrounding the violation; more severe departures are generally associated with an increased likelihood of harm to persons or property and, therefore, warrant a higher severity level.

   **b.   Violation Conduct With Multiple Applicable Table of Violations Entries.** When violation conduct implicates more than one entry in the Table of Violations, the most applicable entry is used, based on the facts and circumstances of the case. If the entries are equally applicable to the facts, the more specific entry is used to determine severity. If none of the entries is more specific, then the higher severity level is used.

   **c.   Related Table of Violations Entries With Varying Levels of Severity.** In the table of violations, there are many entries describing related conduct with differing levels of severity, *e.g.*, low flight violations having a different severity level depending on whether the operation

11/14/2022                                                                    2150.3C CHG 10

was over a congested or uncongested area. When assessing the applicable severity level, AGC-300 counsel considers the facts and circumstances of the particular case, but not fortuitous aspects of the case. For example, an operational violation may be more hazardous in heavy traffic, but it is not less hazardous because no midair collision actually occurred. Similarly, a failure to inspect may be more hazardous the more overdue the inspection is, but it is not less hazardous because no problems were detected when the inspection was finally performed.

   d. **Violation Conduct That May Warrant Remedial Action Instead of or in Conjunction with Punitive Action.** As discussed in paragraph 8, above, the FAA may take remedial action when a certificate holder lacks the qualifications to hold the certificate, the FAA has reason to question, but is unable to determine, the certificate holder's qualifications, or the certificate holder does not comply with statutory or regulatory requirements to cooperate with the FAA. Violation conduct marked with an (*) are types of violations that often indicate a lack of qualifications for which remedial action may be appropriate, either instead of, or in conjunction with, a punitive action.

   e. **Violation Conduct That May Warrant Remedial and Punitive Action.** As noted in paragraph 4, above, the FAA may take both remedial and punitive action when appropriate. Violation conduct for which this is likely is marked with a (†).

   f. **Technical Noncompliance, Potential Effect on Safety, and Likely Effect on Safety.** Some of the related entries with varying severity levels use the phrases "technical noncompliance," "potential effect on safety," and "likely effect on safety."

   *Technical Noncompliance (or Technical Non-Conformity)*: A violation falls into this category where serious injury, death, or severe damage could not realistically occur as a result of the violation conduct. Such a consequence may be theoretically possible, but the likelihood is remote.

   *Potential Effect on Safety*: A violation falls into this category where serious injury, death, or severe damage could realistically occur as a result of the violation conduct, but in the particular facts and circumstances of the case such a consequence would not often occur.

   *Likely Effect on Safety*: A violation falls into this category where serious injury, death, or severe damage may occur more often as a result of the violation conduct.

**Figure 9-9: Table of Violations.**

**Index**

Figure 9-9-a.   General Violations   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9-21
Figure 9-9-b.   Violations of Generally Applicable Operational Requirements  . . . . . . . . . .  9-21
Figure 9-9-c.   Small Unmanned Aircraft Systems (sUAS) Violations  . . . . . . . . . . . . . . .  9-24
Figure 9-9-d.   Remote Identification of Unmanned Aircraft. . . . . . . . . . . . . . . . . . . . . . . . .  9-25

11/14/2022                                                                                    2150.3C CHG 10

Figure 9-9-e.    Violations of Generally Applicable Maintenance and Documentation
                      Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9-26
Figure 9-9-f.    Violations Specific to Air Carriers, Commercial Operators, Part 125
                      Operators, Part 129 Operators, and Their Personnel . . . . . . . . . . . . . . . . . .    9-26
Figure 9-9-g.    Violations Specific to Repair Stations    . . . . . . . . . . . . . . . . . . . . . . . . .    9-29
Figure 9-9-h.    Violations Specific to Part 141 Pilot Schools . . . . . . . . . . . . . . . . . . . . . . .    9-30
Figure 9-9-i.    Interference with Crewmembers and Unruly Passenger Conduct    . . . . . . .    9-30
Figure 9-9-j.    Aircraft Registration Violations    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9-30
Figure 9-9-k.    Drug Convictions and DUI/DWI Program Violations    . . . . . . . . . . . . . . .    9-31
Figure 9-9-l.    Drug and Alcohol Testing Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9-31
Figure 9-9-m.    Design and Production (Including ODA) Violations . . . . . . . . . . . . . . . . . .    9-35
Figure 9-9-n.    Violations Specific to Airport Operators . . . . . . . . . . . . . . . . . . . . . . . . . .    9-36
Figure 9-9-o.    Commercial Space    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9-37

| Fig. 9-9-a. General Violations | Severity |
|---|---|
| (1) Failure to make available a record required to be provided† | Severity 3 |
| (2) Failure to permit inspection† | Severity 3 |
| (3) Engaging in an activity that requires a certificate, rating, approval, authorization, license, or permit without holding one | Severity 3 |
| (4) Failure to surrender a revoked, suspended, denied, or invalid certificate | Severity 1 |
| (5) Improper removal, changing, or placing of identification information on a product | Severity 2 |
| (6) Improper removal or installation of identification plate | Severity 2 |
| (7) Conviction for violation of Section 13(a) of Fish & Wildlife Act of 1956 (49 U.S.C. § 44709(b)(2)) | Severity 3 |

| Fig. 9-9-b. Violations of Generally Applicable Operational Requirements | Severity |
|---|---|
| *Qualification and Certification* | |
| (1) Operation without holding pilot certificate | Severity 3 |
| (2) Operation without pilot or medical certificate in personal possession (certificates valid) (not intentional) | Severity 1 (civil penalty) |
| (3) Operation without pilot or medical certificate in personal possession (certificates valid) (intentional) | Severity 1 |
| (4) Operation with expired medical certificate when medically qualified (medical certificate expired by less than three months and operation only required a third-class medical certificate) | Severity 1 |
| (5) Operation with expired medical certificate when medically qualified (medical certificate expired by more than three months or operation required a first- or second-class medical certificate) | Severity 2 |
| (6) Operation without type or class rating | Severity 2 |
| (7) Operation for compensation or hire when valid pilot certificate allowing for commercial operations had not been issued† | Severity 3 |
| (8) Advertising or offering to perform unauthorized air carrier or commercial operations | Severity 3 |

9-21

11/14/2022                                                                                    2150.3C CHG 10

| Fig. 9-9-b. Violations of Generally Applicable Operational Requirements | Severity |
|---|---|
| (9) Operation without a current flight review | Severity 1 |
|  |  |
| *Airworthiness and Maintenance* |  |
| (10) Unairworthy aircraft operation - technical noncompliance (*e.g.*, technical non-conformity to TC) | Severity 1 |
| (11) Unairworthy aircraft operation - potential effect on safety | Severity 2 |
| (12) Unairworthy aircraft operation - likely effect on safety | Severity 3 |
| (13) Operation of aircraft without required equipment or with required equipment not activated or nonfunctional - technical noncompliance | Severity 1 |
| (14) Operation of aircraft without required equipment or with required equipment not activated or nonfunctional - potential effect on safety | Severity 2 |
| (15) Operation of aircraft without required equipment or with required equipment not activated or nonfunctional - likely effect on safety | Severity 3 |
| (16) Operation of aircraft when airworthiness directive is not complied with | Severity 3 |
| (17) Operation of aircraft beyond annual, 100-hour, or progressive inspection | Severity 2 |
| (18) Failure to ensure discrepancy is cleared prior to operation | Severity 1 |
| (19) Operation when an airworthiness certificate has not been issued | Severity 2 |
| (20) Operation without airworthiness certificate on aircraft | Severity 1 |
|  |  |
| *Preflight* |  |
| (21) Failure to obtain pre-flight information | Severity 1 |
| (22) Taking off with insufficient fuel, fuel mismanagement, or exhaustion | Severity 2 |
|  |  |
| *Taxiing* |  |
| (23) Deviation from air traffic control (ATC) instruction or clearance (runway incursion) | Severity 2 |
| (24) Deviation from ATC instruction or clearance | Severity 1 |
| (25) Jet blast | Severity 2 |
|  |  |
| *Takeoff, Approach, and Landing* |  |
| (26) Takeoff or landing without clearance | Severity 2 |
| (27) Deviation from takeoff clearance or instruction | Severity 2 |
| (28) Deviation from approach or landing clearance or instruction | Severity 1 |
| (29) Failure to comply with airport traffic pattern | Severity 1 |
| (30) Failure to comply with instrument approach procedure | Severity 1 |
| (31) Takeoff in excess of maximum gross weight | Severity 2 |
| (32) Overweight landing | Severity 1 |
|  |  |
| *Operations – General* |  |
| (33) Failure to comply with operating limitation | Severity 2 |
| (34) Failure to adhere to right of way rule | Severity 2 |
| (35) Failure to maintain required minimum altitude – congested area | Severity 3 |
| (36) Failure to maintain required minimum altitude – uncongested area | Severity 2 |

09/09/2024                                                                 2150.3C CHG 12

| Fig. 9-9-b. Violations of Generally Applicable Operational Requirements | Severity |
|---|---|
| (37) Failure to display position light | Severity 1 |
| (38) Unauthorized dropping of object from aircraft | Severity 2 |
| (39) Unauthorized towing | Severity 1 |
| (40) Unauthorized aerobatic flight | Severity 3 |
| (41) Operating so as to cause a collision hazard | Severity 3 |
| (42) Exceeding speed limitation | Severity 1 |
| (43) Deviation from ATC clearance or instruction | Severity 1 |
| | |
| *Operations – Visual Flight Rules (VFR)/Instrument Flight Rules (IFR)/Weather* | |
| (44) Failure to comply with VFR cruising altitude | Severity 1 |
| (45) Operating VFR in clouds | Severity 3 |
| (46) Failure to comply with distance from clouds requirement | Severity 2 |
| (47) Failure to comply with weather minimum | Severity 2 |
| (48) Failure to maintain radio watch while under IFR | Severity 1 |
| (49) Failure to report compulsory reporting point under IFR | Severity 1 |
| (50) Failure to comply with IFR landing minimum | Severity 2 |
| | |
| *Operations – Airspace Restrictions* | |
| (51) Operation in Class B airspace without clearance | Severity 2 |
| (52) Operation contrary to NOTAM | Severity 1 |
| (53) Unauthorized operation within Class A airspace | Severity 1 |
| (54) Operating within restricted or prohibited area (including a temporary flight restriction (TFR)) | Severity 1 |
| (55) Failure to establish and maintain radio communications in Class C or D airspace | Severity 1 |
| (56) Failure to comply with ADS-B Out performance or broadcast requirements – technical noncompliance | Severity 1 |
| (57) Failure to comply with ADS-B Out performance or broadcast requirements – possible effect on safety | Severity 2 |
| (58) Failure to comply with ADS-B Out performance or broadcast requirements – likely effect on safety | Severity 3 |
| | |
| *Careless or Reckless Operation (Independent Violation)* | |
| (59) Leaving aircraft unattended with engine running | Severity 1 |
| (60) Taxiing collision hazard (no runway incursion) | Severity 1 |
| (61) Taxiing aircraft off runway, taxiway, or ramp | Severity 1 |
| (62) Landing on or taking off from closed runway | Severity 2 |
| (63) Landing on or taking off from taxiway, ramp, or other improper area | Severity 2 |
| (64) Wheels up landing | Severity 1 |
| (65) Short or long landing | Severity 2 |
| | |
| *Passenger Operations* | |
| (66) Carrying passenger who is under the influence of drugs or alcohol | Severity 2 |

11/14/2022                                                                2150.3C CHG 10

| **Fig. 9-9-b. Violations of Generally Applicable Operational Requirements** | **Severity** |
|---|---|
| (67) Performing acrobatics when not all passengers are equipped with approved parachutes | Severity 2 |
| (68) Carrying unapproved emergency use parachute on aircraft | Severity 1 |
| (69) Permitting unauthorized parachute jumping | Severity 2 |
| (70) Carrying passenger without required recent flight experience | Severity 2 |
| (71) Operation without an approved seat or berth and approved safety belt for each person on board the aircraft required to have them | Severity 2 |
| | |
| *Flight Instructors* | |
| (72) Exceeding hours of training limitation | Severity 1 |
| (73) Instruction in aircraft for which instructor is not rated | Severity 3 |
| | |
| *Student Pilot Operations* | |
| (74) Solo flight without required endorsement | Severity 2 |
| (75) Operation on international flight | Severity 2 |
| (76) Operation in furtherance of a business | Severity 2 |
| | |
| *Aircraft Noise* | |
| (77) Violation of noise standard or regulation | Severity 2 |
| (78) Violation of sonic boom standard or regulation | Severity 3 |
| (79) Recordkeeping or notification violation | Severity 1 |

| **Fig. 9-9-c. Small Unmanned Aircraft Systems (sUAS) Violations** | **Severity** |
|---|---|
| (1) Operation without remote pilot certificate | Severity 3 |
| (2) Operation without required rating | Severity 2 |
| (3) Operation of sUAS without registration | Severity 1 |
| (4) Operation of sUAS without registration – enhanced severity (including operations in restricted airspace, interfering with manned aircraft operations, disrupting airport operations, interfering with law enforcement, interfering with wildfire suppression, interfering with emergency response, involving carriage of contraband, and/or involving carriage of weapons) | Severity 3 |
| (5) Participation in operation of sUAS with medical condition that would interfere with safe operation | Severity 3 |
| (6) Operation of sUAS without designated remote pilot-in-command | Severity 3 |
| (7) Dropping an object that creates an undue hazard | Severity 2 |
| (8) Operation from moving vehicle or aircraft | Severity 2 |
| (9) Operation at night while not in compliance with 14 C.F.R. § 107.29 | Severity 2 |
| (10) Operation during civil twilight while not in compliance with 14 C.F.R. § 107.29 | Severity 1 |
| (11) Operation beyond visual line of sight | Severity 3 |
| (12) Operation of more than one sUAS at the same time | Severity 2 |
| (13) Failure to give way to any other aircraft | Severity 3 |
| (14) Operation close to another aircraft so as to create a collision hazard | Severity 3 |

9-24

11/14/2022                                                                                2150.3C CHG 10

| Fig. 9-9-c. Small Unmanned Aircraft Systems (sUAS) Violations | Severity |
|---|---|
| (15) Unauthorized operation in Class B, C, or D airspace | Severity 3 |
| (16) Unauthorized operation within the lateral bounds of Class E airspace designated for an airport | Severity 2 |
| (17) Operation in a prohibited or restricted area (including a TFR) | Severity 3 |
| (18) Failure to complete preflight familiarization or inspection | Severity 1 |
| (19) Failure to ensure sUAS is in a condition for safe operation – potential effect on safety | Severity 2 |
| (20) Failure to ensure sUAS is in a condition for safe operation – likely effect on safety | Severity 3 |
| (21) Operation in excess of 87 knots (100 mph) | Severity 1 |
| (22) Operation above 400 feet above ground level or 400 feet above a structure within 400 feet of the sUAS | Severity 2 |
| (23) Operation with visibility less than 3 miles | Severity 2 |
| (24) Failure to comply with distance from clouds requirement | Severity 2 |
| (25) Carriage of hazardous material | Severity 3 |
| (26) Operation after failing to update address of records | Severity 1 |
| (27) Operation without aeronautical knowledge recency | Severity 1 |
| (28) Failure to make required accident report | Severity 2 |
| (29) Failure to permit FAA inspection, testing, and demonstration of compliance or failure to present remote pilot certificate upon request† | Severity 3 |
|  |  |
| *Operations Over Human Beings* |  |
| (30) sUAS meeting weight criteria of 14 C.F.R. part 107, subpart D, Category 1 without meeting all other requirements for that category | Severity 1 |
| (31) sUAS meeting injury criteria of 14 C.F.R. part 107, subpart D, Category 2 without meeting all other requirements for that category | Severity 2 |
| (32) sUAS meeting injury criteria of 14 C.F.R. part 107, subpart D, Category 3 without meeting all other requirements for that category† | Severity 3 |
| (33) Category 4 operation – failure to meet maintenance performance requirements – technical noncompliance | Severity 1 |
| (34) Category 4 operation – failure to meet maintenance performance requirements – potential effect on safety | Severity 2 |
| (35) Category 4 operation – failure to meet maintenance performance requirements – actual effect on safety | Severity 3 |
| (36) Category 4 operation – failure to meet maintenance records requirements | Severity 2 |

| Fig. 9-9-d. Remote Identification of Unmanned Aircraft | Severity |
|---|---|
| (1) Failure to comply with remote ID requirements | Severity 3 |
| (2) Failure to comply with record retention requirements | Severity 2 |
| (3) Failure to comply with the remote identification design or production requirements | Severity 3 |

11/14/2022                                                                                    2150.3C CHG 10

| Fig. 9-9-e. Violations of Generally Applicable Maintenance and Documentation Requirements | Severity |
|---|---|
| (1) Failure to perform or improper performance of maintenance including inspection – technical noncompliance | Severity 1 |
| (2) Failure to perform or improper performance of maintenance including inspection – potential effect on safety | Severity 2 |
| (3) Failure to perform or improper performance of maintenance including inspection – likely effect on safety | Severity 3 |
| (4) Failure to comply with airworthiness directive (AD) | Severity 3 |
| (5) Making improper or incomplete entry in maintenance record | Severity 1 |
| (6) Failure to make entry in maintenance record | Severity 2 |
| (7) Failure to revise aircraft data after repair or alteration | Severity 2 |
| (8) Failure to properly record major repair or alteration | Severity 2 |
| (9) Failure to provide to owner and/or forward to Flight Standards Aircraft Registration an FAA Form 337 following a major repair or alteration | Severity 2 |
| (10) Failure of IA holder to accomplish inspection properly – potential effect on safety | Severity 2 |
| (11) Failure of IA holder to accomplish inspection properly – likely effect on safety* | Severity 3 |
| (12) Maintenance performed by person without a certificate | Severity 3 |
| (13) Maintenance performed by person who exceeded certificate limitations | Severity 2 |
| (14) Improper approval for return to service | Severity 1 |
| (15) Alteration of aircraft based on a supplemental type certificate (STC) without authorization to use STC | Severity 1 |
| (16) Making improper or incomplete entry in aircraft log | Severity 1 |
| (17) Failure to make entry in aircraft log | Severity 2 |

| Fig. 9-9-f. Violations Specific to Air Carriers, Commercial Operators, Part 125 Operators, Part 129 Operators, and Their Personnel | Severity |
|---|---|
| *General* | |
| (1) Failure to adequately provide for proper servicing, maintenance, repair, or inspection of facilities and equipment* | Severity 3 |
| (2) Failure to permit inspection of facilities, records, aircraft, or certificate† | Severity 3 |
| (3) Failure to make flight deck seat available to authorized en route inspector | Severity 3 |
| | |
| *Operations Specifications* | |
| (4) Operation contrary to ops specs – technical noncompliance | Severity 1 |
| (5) Operation contrary to ops specs – potential effect on safety | Severity 2 |
| (6) Operation contrary to ops specs – likely effect on safety | Severity 3 |
| (7) Carriage of hazmat contrary to will-not-carry hazmat specification | Severity 3 |
| | |
| *Manuals* | |
| (8) Failure to maintain or distribute current manual | Severity 1 |

9-26

| Fig. 9-9-f. Violations Specific to Air Carriers, Commercial Operators, Part 125 Operators, Part 129 Operators, and Their Personnel | Severity |
|---|---|
| (9) Failure to provide adequate instructions and procedures in manual | Severity 2 |
| (10) Failure to keep manual current | Severity 1 |
| (11) Failure to have current manual on aircraft | Severity 1 |
|  |  |
| *Training Program* |  |
| (12) Failure to have training program* | Severity 3 |
| (13) Failure to maintain training program | Severity 2 |
| (14) Failure to train personnel adequately | Severity 2 |
|  |  |
| *Crew* |  |
| (15) Use of crewmember with expired medical certificate (no known medical deficiency) | Severity 2 |
| (16) Use of unqualified flight crewmember | Severity 3 |
| (17) Use of unqualified personnel other than flight deck crewmember | Severity 3 |
| (18) Missed proficiency or line check | Severity 1 |
| (19) Lack of current experience | Severity 2 |
| (20) Lack of initial or recurrent training | Severity 2 |
| (21) Flight and duty time violation | Severity 2 |
| (22) Violation of sterile cockpit rule | Severity 1 |
| (23) Failure to use, or improper use of, checklist | Severity 1 |
| (24) Failure to perform or ensure performance of preflight check | Severity 2 |
| (25) Improper performance of preflight check | Severity 1 |
|  |  |
| *Passenger Operations* |  |
| (26) Taxiing with standing passenger | Severity 1 |
| (27) Failure to brief passengers | Severity 2 |
| (28) Failure to store baggage properly | Severity 2 |
| (29) Unauthorized admission to flight deck | Severity 1 |
| (30) Failure to close and lock flight deck door | Severity 1 |
|  |  |
| *Maintenance* |  |
| (31) Failure to provide or maintain a maintenance and inspection organization* | Severity 3 |
| (32) Incomplete or unsigned release | Severity 1 |
| (33) Maintenance performed by person without certificate | Severity 3 |
| (34) Maintenance performed by person who exceeded certificate limitations | Severity 2 |
| (35) Performance of maintenance or approval for return to service by unauthorized person | Severity 3 |
|  |  |
| *Records and Reports* |  |
| (36) Failure to make accurate mechanical interruption summary report | Severity 2 |
| (37) Failure to make accurate mechanical reliability report | Severity 2 |

11/14/2022                                                                            2150.3C CHG 10

| Fig. 9-9-f. Violations Specific to Air Carriers, Commercial Operators, Part 125 Operators, Part 129 Operators, and Their Personnel | Severity |
|---|---|
| *Release and Dispatch* | |
| (38) Dispatch or release of an aircraft or beginning a flight without being familiar with reported and forecast weather conditions | Severity 2 |
| (39) Failure to provide and update pilot-in-command with all available weather reports and forecasts that may affect the safety of the flight | Severity 2 |
| (40) Failure to provide and update pilot-in-command with all available current reports or information on airport conditions and irregularities at navigational facilities that may affect the safety of the flight | Severity 2 |
| (41) Dispatch or release below applicable weather minimums | Severity 2 |
| (42) Dispatch or release without appropriate alternate airport | Severity 2 |
| (43) Continuing flight in unsafe conditions despite safer alternative | Severity 3 |
| (44) Dispatch, release, or operation in icing conditions that may affect the safety of flight | Severity 3 |
| (45) Dispatch, release, or takeoff when snow, ice, or frost is adhering or could reasonably be expected to adhere to the aircraft | Severity 3 |
| (46) Failure to prepare an accurate load manifest | Severity 1 |
| (47) Operation without having filed a flight plan | Severity 1 |
| | |
| *Operations at Airports Requiring Slots* | |
| (48) Operation without a reservation from ATC | Severity 2 |
| (49) Operation with a reservation from ATC but at the wrong time | Severity 1 |
| (50) Use of international slot for domestic flight | Severity 2 |
| (51) Use of aircraft not meeting criteria in 14 C.F.R. § 93.123(c)(2) in commuter slot | Severity 2 |
| | |
| *Pilot Records Improvement Act (PRIA) & Pilot Records Database (PRD)* | |
| (52) Permitting a person to begin service as a pilot prior to evaluating all information required under PRIA or PRD | Severity 3 |
| (53) Failing to obtain from the subject of a PRIA request a written consent for release of records requested under PRIA | Severity 2 |
| (54) Furnishing records pursuant to a request under PRIA before receiving a copy of the written consent of the individual who is the subject of the request | Severity 2 |
| (55) Failing to obtain written consent from a pilot before performing a National Driver Register search as part of a PRD record review | Severity 2 |
| (56) Failing to provide a copy of all records pursuant to a request under PRIA within 30 days of the date the request is received | Severity 2 |
| (57) Failing to provide required written notice to the subject of a PRIA request | Severity 2 |
| (58) Failing to permit a pilot to correct inaccuracies in PRIA records before making a final hiring decision | Severity 1 |
| (59) Failing to make required PRIA records available within 30 days upon written request from a pilot | Severity 2 |
| (60) Failing to timely provide a pilot with a copy of state motor vehicle records obtained as part of a PRD record review | Severity 1 |

11/14/2022                                                                2150.3C CHG 10

| Fig. 9-9-f. Violations Specific to Air Carriers, Commercial Operators, Part 125 Operators, Part 129 Operators, and Their Personnel | Severity |
|---|---|
| (61) Failing to provide final disciplinary action or final separation from employment records upon request from a pilot or reviewing entity | Severity 2 |
| (62) Failing to maintain required records or information | Severity 3 |
| (63) Failing to timely report required records or information for entry into the PRD | Severity 3 |
| (64) Failing to timely correct records or information reported to the PRD | Severity 2 |
| (65) Reporting records or information prohibited by 14 C.F.R part 111, subpart C, to PRD | Severity 2 |
| (66) Using PRD access or PRD/PRIA information for reasons other than to inform a hiring decision concerning a pilot or to report information | Severity 2 |
| (67) Failing to protect the confidentiality of PRIA/PRD records or the privacy of the pilot as to PRIA/PRD records | Severity 2 |
| (68) Failing to timely apply or timely amend application for PRD access | Severity 2 |

| Fig. 9-9-g. Violations Specific to Repair Stations | Severity |
|---|---|
| (1) Failure to maintain record of supervisory or inspection personnel | Severity 2 |
| (2) Failure to maintain record | Severity 2 |
| (3) Failure to ensure correct calibration of inspection and test equipment at prescribed intervals | Severity 2 |
| (4) Making improper or incomplete entry in maintenance record | Severity 1 |
| (5) Failure to make entry in maintenance record | Severity 2 |
| (6) Making improper or incomplete record or report | Severity 1 |
| (7) Failure to make entry in record or report | Severity 2 |
| (8) Failure to sign or complete maintenance release | Severity 1 |
| (9) Performance of maintenance or approval for return to service by unauthorized person | Severity 3 |
| (10) Maintaining or altering an airframe, powerplant, propeller, instrument, radio, or accessory for which the repair station is not rated* | Severity 3 |
| (11) Maintaining or altering an article for which the repair station is rated without using required technical data, equipment, or facilities | Severity 3 |
| (12) Failure to report defect or unairworthy condition to FAA in a timely manner | Severity 2 |
| (13) Failure to report defect or unairworthy condition to FAA | Severity 3 |
| (14) Failure to have adequate housing* | Severity 2 |
| (15) Failure to have required facilities* | Severity 2 |
| (16) Failure to provide qualified personnel who can perform, supervise, and inspect work for which the station is rated* | Severity 3 |
| (17) Failure to meet equipment, materials, and data requirements* | Severity 2 |
| (18) Change of location, housing, or facilities without written approval | Severity 2 |
| (19) Failure to provide adequate instructions and procedures in repair station manual (RSM) or quality control manual (QCM) | Severity 2 |
| (20) Failure to follow RSM/QCM – technical noncompliance | Severity 1 |

11/14/2022                                                                 2150.3C CHG 10

| Fig. 9-9-g. Violations Specific to Repair Stations | Severity |
|---|---|
| (21) Failure to follow RSM/QCM – potential effect on safety | Severity 2 |
| (22) Failure to follow RSM/QCM – likely effect on safety | Severity 3 |
| (23) Failure to permit FAA to inspect† | Severity 3 |
| (24) Failure to have training program* | Severity 3 |
| (25) Failure to maintain training program | Severity 2 |
| (26) Failure to train personnel adequately | Severity 2 |
| (27) Failure to provide notification of hazmat authorizations | Severity 2 |

| Fig. 9-9-h. Violations Specific to Part 141 Pilot Schools | Severity |
|---|---|
| (1) Failure to permit inspection of facilities, equipment, personnel, records, or certificate* | Severity 3 |
| (2) False or misleading advertising* | Severity 3 |
| (3) Failure to carry checklist or operator's handbook on aircraft | Severity 1 |
| (4) Improper crediting to, or graduation of, student | Severity 2 |
| (5) Refusal to permit FAA test, check, or examination of student† | Severity 3 |
| (6) Unqualified or unauthorized instruction | Severity 3 |
| (7) Failure to establish training record | Severity 3 |
| (8) Failure to maintain current and accurate training record | Severity 2 |
| (9) Failure to retain training record | Severity 2 |

| Fig. 9-9-i. Interference with Crewmembers and Unruly Passenger Conduct | Severity |
|---|---|
| (1) Using a laser to interfere with a crewmember† | Severity 3 |
| (2) Interference with a crewmember | Severity 2 |
| (3) Physically assault or threat to physically assault a flight or cabin crewmember under 49 U.S.C. § 46318 | Severity 3 |
| (4) Physically assault or threaten to physically assault a person assigned to perform a law enforcement function on a flight under 49 U.S.C. § 46318 | Severity 3 |
| (5) Physically assault or threaten to physically assault an individual other than a crewmember under 49 U.S.C. § 46318 | Severity 2 |
| (6) Sexually assault or threaten to sexually assault a flight or cabin crewmember or other individual under 49 U.S.C. § 46318 | Severity 3 |
| (7) Acts in a manner that poses imminent threat to safety of aircraft or collective safety of other individuals on aircraft under 49 U.S.C. § 46318 | Severity 3 |
| (8) Smoking on aircraft | Severity 3 |
| (9) Tampering with a smoke detector | *See* Fig. 9-2 |
| (10) Failure to fasten seat belt/harness or failure to occupy approved seat or berth when required | Severity 2 |
| (11) Unauthorized operation of a portable electronic device | Severity 1 |
| (12) Drinking alcoholic beverage not served by carrier | Severity 1 |

09/09/2024                                                          2150.3C CHG 12

| Fig. 9-9-j. Aircraft Registration Violations | Severity |
|---|---|
| (1) Operation of an aircraft that has never been registered | Severity 3 |
| (2) Operation, by the owner, of an aircraft with an invalid, suspended, or revoked registration | Severity 2 |
| (3) Operation of an aircraft with an invalid, suspended, or revoked registration (operator other than owner) | Severity 1 |
| (4) Operation of an aircraft on an otherwise ineffective registration | Severity 1 |
| (5) Operation without certificate of registration readily available | Severity 1 |
| (6) Operation on pink copy after 90 days | Severity 1 |
| (7) Operation on pink copy outside the U.S. | Severity 2 |
| (8) Failure to submit required flight information on an aircraft registered to a non-citizen corporation | Severity 1 |
| (9) Failure to submit change of address | Severity 1 |
| (10) Failure to submit required dealer information | Severity 2 |

| Fig. 9-9-k. Drug Convictions and DUI/DWI Program Violations | Severity |
|---|---|
| *Motor Vehicle Actions (MVA)* | |
| (1) Failure to report an MVA | Severity 1 |
| (2) Two MVAs arising from separate incidents within 3 years | Severity 2 |
| | |
| *Drug Convictions* | |
| (It may be appropriate, in the exercise of prosecutorial discretion, to not take legal enforcement action when the most recent conviction is at least five years old when discovered by the FAA and there is evidence that the certificate holder has been rehabilitated such that the individual can be expected to conform their conduct to safety requirements) | |
| (3) Single conviction for simple possession (offense of conviction does not include growing, processing, manufacturing, sale, distribution, transportation, or importation, or intent to engage in such conduct) | Severity 1 |
| (4) Two convictions for simple possession | Severity 2 |
| (5) Three or more convictions for simple possession* | Severity 3 |

| Fig. 9-9-l. Drug and Alcohol Testing Violations | Severity |
|---|---|
| *General* | |
| (1) Failure to implement an FAA-mandated drug and alcohol testing program* | Severity 3 |
| (2) Failure to include a safety-sensitive employee (or contractor) in FAA-mandated drug and alcohol testing program | Severity 3 |
| (3) Inappropriate testing using DOT or FAA authority | Severity 1 |
| | |
| *Violations of Drug and Alcohol Prohibitions* | |
| (4) Failure to remove an individual from safety-sensitive functions for on-duty use, pre-duty use, use following an accident, refusal to submit to a test, and/or a drug positive and/or an alcohol concentration of .04 or greater | Severity 3 |

11/14/2022                                                                2150.3C CHG 10

| Fig. 9-9-l. Drug and Alcohol Testing Violations | Severity |
|---|---|
| (5) Allowing a covered employee who used alcohol within 8 hours of an accident to perform or continue performing safety-sensitive functions | Severity 3 |
| (6) Failure to notify the Federal Air Surgeon of a medical certificate holder who received a positive drug test result and/or received an alcohol concentration of .04 or greater on an alcohol test | Severity 3 |
| (7) Allowing a medical certificate holder to perform safety-sensitive duties for an employer following an alcohol violation and/or drug positive | Severity 3 |
| (8) Failure to notify the FAA of a certificate holder who refused to submit to testing | Severity 3 |
| (9) Failure to notify the FAA of an individual who tested positive on a DOT drug test, engaged in prohibited alcohol conduct, or refused to submit to a test within two working days of the date of the incident | Severity 2 |
| (10) Knowingly using any person to perform any safety-sensitive function after that person was permanently precluded from performing that safety sensitive function† | Severity 3 |
| | |
| *Pre-employment drug testing* | |
| (11) Failure to advise each individual applying to perform a safety-sensitive function of the pre-employment testing requirement | Severity 1 |
| (12) Failure to pre-employment drug test an individual or receive a negative drug test result prior to hiring or transferring that individual for a safety-sensitive function (no performance) | Severity 1 |
| (13) Failure to pre-employment drug test an individual or receive a negative drug test result prior to hiring or transferring that individual for a safety-sensitive function (performance) | Severity 3 |
| (14) Failure to pre-employment drug test before hiring or transferring an individual into a safety-sensitive position if more than 180 days elapse between a pre-employment test and placing the individual into a safety-sensitive function (no performance) | Severity 1 |
| (15) Failure to pre-employment drug test before hiring or transferring an individual into a safety-sensitive position if more than 180 days elapse between a pre-employment test and placing the individual into a safety-sensitive function (performance) | Severity 3 |
| | |
| *Random Drug and Alcohol Testing* | |
| (16) Failure to conduct any random drug and/or alcohol testing for safety-sensitive employees during calendar year | Severity 3 |
| (17) Failure to meet the minimum annual percentage rate for random drug and/or alcohol testing | Severity 2 |
| (18) Failure to test employee selected for random drug and/or alcohol testing | Severity 3 |
| (19) Failure to use a scientifically valid method of random selection | Severity 2 |
| (20) Failure to ensure that random drug and/or alcohol tests are unannounced | Severity 2 |
| (21) Failure to ensure the dates for administering random tests are spread reasonably throughout the calendar year | Severity 1 |

09/09/2024                                                                2150.3C CHG 12

| Fig. 9-9-l. Drug and Alcohol Testing Violations | Severity |
|---|---|
| (22) Failure to ensure that an employee who is notified to report for random drug and/or alcohol testing proceeds immediately to the testing site | Severity 2 |
| (23) Conducting a random alcohol test at a time other than just before, during, or just after the employee has ceased performing a safety-sensitive function | Severity 1 |
| (24) Failure to include an employee in random testing pool | Severity 3 |
|  |  |
| *Post-Accident Drug and Alcohol Testing* |  |
| (25) Failure to drug and/or alcohol test each employee if that employee's performance of a safety-sensitive function either contributed to an accident or cannot be completely discounted as a contributing factor to the accident | Severity 3 |
| (26) Failure to post-accident drug test an employee within 32 hours after the accident | Severity 3 |
| (27) Failure to conduct post-accident alcohol testing on an employee within 8 hours after the accident | Severity 3 |
| (28) Failure to prepare and maintain on file required records stating the reasons the post-accident alcohol test was not administered within 2 hours and/or 8 hours | Severity 1 |
|  |  |
| *Reasonable Cause Drug and Reasonable Suspicion Alcohol Testing* |  |
| (29) Failure to drug and/or alcohol test each employee who performs a safety-sensitive function and who is reasonably suspected of using a prohibited drug and/or misusing alcohol | Severity 3 |
| (30) Reasonable cause drug testing of individuals without a reasonable and articulable belief that the employee is using a prohibited drug on the basis of specific, contemporaneous physical, behavioral, or performance indicators of probable drug use | Severity 1 |
| (31) Reasonable suspicion alcohol testing of individuals when reasonable suspicion of alcohol misuse has not been determined by a trained supervisor based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odor of the employee | Severity 1 |
| (32) Failure to prepare and maintain on file a record stating the reasons the reasonable suspicion alcohol test was not administered within 2 hours and/or 8 hours | Severity 1 |
| (33) Failure to remove a safety-sensitive employee who is under the influence of or impaired by alcohol | Severity 3 |
|  |  |
| *Return-to-Duty Drug and Alcohol Testing* |  |
| (34) Failure to conduct a return-to-duty drug test under direct observation and receive a negative result before an individual is returned to perform a safety-sensitive function after the individual refused to submit to a required drug test or received a verified positive drug test result | Severity 3 |
| (35) Failure to administer a return-to-duty alcohol test and receive a result with an alcohol concentration of less than 0.02 on an individual who engaged in prohibited conduct prior to returning them to a safety-sensitive function. | Severity 3 |

| Fig. 9-9-l. Drug and Alcohol Testing Violations | Severity |
|---|---|
| *Follow-up Drug and Alcohol Testing* | |
| (36) Failure to conduct unannounced follow-up drug or alcohol testing in accordance with the SAP's recommendation | Severity 3 |
| (37) Failure to conduct follow-up drug testing under direct observation | Severity 3 |
| (38) Administering a follow-up test after 60 months from the date the individual returned to a covered function, beyond the SAP's follow-up testing plan, or following the SAP's termination of the follow-up testing plan. | Severity 1 |
| (39) Failure to ensure that follow-up alcohol testing of a covered employee only occurs just before the employee is to perform safety-sensitive functions, during, or just after the employee has ceased performing such functions | Severity 1 |
| | |
| *Retesting Covered Employees* | |
| (40) Failure to retest a covered employee with an alcohol concentration of greater than .02 and less than .04 when the employer has chosen to permit the employee to perform a safety-sensitive function within 8 hours of alcohol use | Severity 3 |
| (41) Permitting an individual with an alcohol concentration of .02 or above to return-to-duty performing safety-sensitive functions unless 8 hours has elapsed or the individual is retested and tests below 0.02 | Severity 3 |
| | |
| *Administrative Matters* | |
| (42) Failure to conduct employee drug and alcohol testing records check under 49 C.F.R. § 40.25 | Severity 1 |
| (43) Failure to conduct drug and alcohol records check and allowing the employee to perform more than 30 days after the date of first performance | Severity 3 |
| (44) Failure to ask employee if they ever tested positive or refused a pre-employment test in the previous two years and/or request such records from a DOT employer | Severity 1 |
| (45) Failure to provide employee drug and alcohol testing records under 49 C.F.R. § 40.25 | Severity 2 |
| (46) Using an employee to perform safety-sensitive functions after obtaining information that the employee violated DOT drug and alcohol regulations, without verifying that the employee complied with return-to-duty requirements | Severity 2 |
| (47) Failure to submit an accurate annual drug and alcohol (Management Information System) report | Severity 1 |
| (48) Failure to maintain required records related to drug and alcohol program, testing, and/or violations | Severity 2 |
| (49) Failure to maintain records related to all alcohol test results below 0.02 | Severity 1 |
| (50) Releasing drug or alcohol testing information without specific written employee consent | Severity 2 |
| (51) Failure to maintain records in a secure location with controlled access | Severity 2 |
| | |
| *Service Agents* | |
| (52) Failure to use a qualified individual to perform MRO services | Severity 3 |
| (53) Failure to ensure MRO complies with FAA/DOT drug testing requirements | Severity 3 |

9-34

11/14/2022                                                                 2150.3C CHG 10

| Fig. 9-9-l. Drug and Alcohol Testing Violations | Severity |
|---|---|
| (54) Failure to use a qualified individual to perform SAP services | Severity 3 |
| (55) Failure to ensure SAP recommends minimum follow-up testing requirements | Severity 3 |
| (56) Failure to ensure SAP complies with FAA/DOT drug and alcohol testing requirements | Severity 2 |
| (57) Failure to use appropriate urine collection and alcohol testing personnel | Severity 1 |
| (58) Failure to conduct direct observation drug test | Severity 3 |
| (59) Failure to ensure that urine collection or alcohol testing personnel comply with FAA/DOT drug and alcohol testing requirements (that results in test cancellation) | Severity 2 |
| (60) Failure to ensure that urine collection or alcohol testing personnel comply with FAA/DOT drug and alcohol testing requirements (that does not result in test cancellation) | Severity 1 |
| (61) Failure to use a Department of Health and Human Services-approved drug testing laboratory or a National Highway Traffic Safety Administration-approved alcohol testing device | Severity 3 |
| | |
| *Employee Assistance Program/Alcohol Misuse Program* | |
| (62) Failure to establish drug use and/or alcohol misuse policy | Severity 1 |
| (63) Failure to display and/or distribute required information and materials | Severity 1 |
| (64) Failure to conduct employee or supervisory training | Severity 1 |
| (65) Failure to document training or to display or distribute materials | Severity 1 |

| Fig. 9-9-m. Design and Production (Including ODA) Violations | Severity |
|---|---|
| *Specific Violations* | |
| (1) Failure to submit to the FAA or implement design changes necessary to correct an unsafe condition subject to an AD | Severity 3 |
| (2) Failure to report each failure, malfunction, or defect in a product or article when such report is required | Severity 2 |
| (3) Presentation of a nonconforming aircraft for issuance of an initial airworthiness certificate by a production certificate holder (unknowing violation) | Severity 3 |
| (4) Failure to submit safety critical information for a transport category airplane by an applicant for or holder of a type certificate (unknowing violation) | Severity 3 |
| (5) Individual's knowing false statement regarding safety critical type certificate-related information† | Severity 3 |
| (6) Interference with an ODA unit member's performance of authorized functions | Severity 3 |
| (7) Imposing any prohibition, condition, restriction, or penalty with respect to contact between an employee and the FAA regarding aircraft design or production† | Severity 3 |
| | |

| Fig. 9-9-m. Design and Production (Including ODA) Violations | Severity |
|---|---|
| *General* | |
| (8) Remote effect on continued operational airworthiness in the National Airspace System (NAS) | Severity 1 |
| (9) Possible effect on continued operational airworthiness in the NAS | Severity 2 |
| (10) Likely effect on continued operational airworthiness in the NAS | Severity 3 |

| Fig. 9-9-n. Violations Specific to Airport Operators | Severity |
|---|---|
| *General* | |
| (1) Operation without a part 139 certificate | Severity 3 |
| (2) Failure to permit FAA inspector to conduct inspection or make airport certification manual available to the FAA for inspection† | Severity 3 |
| | |
| *Certification Manual* | |
| (3) Failure to comply with an approved airport certification manual – technical noncompliance | Severity 1 |
| (4) Failure to comply with an approved airport certification manual – potential effect on safety | Severity 2 |
| (5) Failure to comply with an approved airport certification manual – likely effect on safety | Severity 3 |
| (6) Failure to include all required information in the airport certification manual | Severity 2 |
| (7) Failure to maintain current airport certification manual on the airport | Severity 1 |
| | |
| *Operations* | |
| (8) Failure to maintain sufficient qualified personnel to comply with requirements of the airport certification manual and FAA regulations | Severity 3 |
| (9) Failure to maintain and repair each paved or unpaved runway, taxiway, loading ramp, and parking area on the airport (major damage or surface failure) | Severity 3 |
| (10) Failure to maintain and repair each paved or unpaved runway, taxiway, loading ramp, and parking area on the airport (other than major damage) | Severity 2 |
| (11) Failure to provide and maintain an airport safety area | Severity 3 |
| (12) Failure to provide and maintain required marking, signing, and lighting systems | Severity 3 |
| (13) Violation of any regulation concerning rescue, firefighting, and/or emergency response | Severity 3 |
| (14) Failure to establish and maintain standards for protecting against fire and explosions in storing, dispensing, and otherwise handling fuel, lubricants, and oxygen | Severity 3 |
| (15) Failure to perform surveillance of fueling activity or inspect physical facilities of fueling agents | Severity 2 |
| (16) Failure to create and maintain a record of the inspection of the physical facilities of each airport tenant fueling agent | Severity 1 |
| (17) Failure to ensure that a fueling agent and its employees are properly trained | Severity 3 |

11/14/2022                                                                    2150.3C CHG 10

| Fig. 9-9-n. Violations Specific to Airport Operators | Severity |
|---|---|
| (18) Failure to require a tenant fueling agent to take corrective action for noncompliance with a fueling standard | Severity 3 |
| (19) Failure to ensure that the airport emergency plan is reviewed with all parties under the plan and that all information in the plan is current | Severity 2 |
| (20) Failure to establish and maintain procedures for the protection of persons and property on the airport during the handling and storing of hazardous materials | Severity 3 |
| (21) Failure to provide traffic and wind direction indicators | Severity 2 |
| (22) Failure to develop and maintain airport emergency plan | Severity 3 |
| (23) Failure to conduct self-inspections of the airport as required | Severity 3 |
| (24) Failure to provide equipment and procedures for carrying out a self-inspection program | Severity 2 |
| (25) Failure to provide for a reporting system to ensure correction of conditions noted during self-inspections | Severity 2 |
| (26) Failure to prepare and keep a record of self-inspections | Severity 2 |
| (27) Failure to make available a record of self-inspections† | Severity 3 |
| (28) Failure to limit access to movement and safety areas to necessary pedestrians and ground vehicles | Severity 3 |
| (29) Failure to establish and implement procedures for access to and operation on movement and safety areas | Severity 3 |
| (30) Failure to ensure that ground vehicles and pedestrians operating on the movement area are controlled by two-way radio communication or other acceptable means | Severity 2 |
| (31) Failure to ensure training on procedures for access to and operation on movement and safety areas | Severity 3 |
| (32) Failure to mark, light, or remove obstructions, construction areas, unserviceable areas, construction equipment, and/or construction roadways | Severity 3 |
| (33) Failure to prevent the construction of facilities on the airport that would derogate the operation of an electronic or visual navaid and air traffic control facilities on the airport | Severity 3 |
| (34) Failure to take immediate measures to alleviate wildlife hazards | Severity 3 |
| (35) Failure to provide for the collection and dissemination of airport condition information to air carriers | Severity 3 |
| (36) Failure to provide procedures for avoiding damage to existing utilities, cables, wires, conduits, pipelines, or other underground facilities | Severity 1 |
| (37) Failure to restrict operations to safe portions of the airport | Severity 3 |
| (38) Failure to conduct and submit a wildlife assessment | Severity 2 |
| (39) Failure to implement an FAA-approved wildlife hazard management plan | Severity 3 |

| Fig. 9-9-o Commercial Space | Severity |
|---|---|
| (1) Inaccuracy in application or failure to apply for modification of application – technical noncompliance | Severity 1 |
| (2) Inaccuracy in application or failure to apply for modification of application – potential effect on safety | Severity 2 |

11/14/2022                                                          2150.3C CHG 10

| Fig. 9-9-o Commercial Space | Severity |
|---|---|
| (3) Inaccuracy in application or failure to apply for modification of application – likely effect on safety | Severity 3 |
| (4) Failure to maintain records | Severity 2 |
| (5) Untimely submission of launch or preflight report or update | Severity 1 |
| (6) Failure to submit launch or preflight report or update | Severity 2 |
| (7) Failure to permit monitoring – failure to provide adequate notification of inspectable activities | Severity 1 |
| (8) Failure to permit monitoring – failure to provide any notice of inspectable activity | Severity 2 |
| (9) Failure to permit monitoring – denial of lawful access† | Severity 3 |
| (10) Failure to file report per specific regulatory timeframe – discrepancy, anomaly, deviation, or mishap present | Severity 2 |
| (11) Failure to file report per specific regulatory timeframe – no discrepancy, anomaly, or deviation present | Severity 1 |
| (12) Failure to comply with post-flight data review requirements | Severity 2 |
| (13) Failure to comply with financial responsibility requirements | Severity 1 |
| (14) Failure to maintain safety organization | Severity 3 |
| (15) Failure to document safety organization | Severity 2 |
| (16) Failure to have personnel certification or qualification program | Severity 3 |
| (17) Failure to properly employ personnel certification or qualification program | Severity 2 |
| (18) Failure to meet flight safety or launch risk criteria requirements | Severity 3 |
| (19) Failure to comply with flight safety analysis requirements | Severity 3 |
| (20) Failure to meet reentry risk criteria requirements | Severity 3 |
| (21) Failure to meet disposal safety requirements | Severity 3 |
| (22) Failure to prevent on-orbit collision | Severity 3 |
| (23) Failure to implement or follow pre-flight procedures | Severity 3 |
| (24) Failure to meet ground safety requirements | Severity 3 |
| (25) Failure to follow launch safety plan | Severity 3 |
| (26) Failure to have or follow mishap plan | Severity 3 |
| (27) Failure to comply with configuration management and control requirements | Severity 3 |
| (28) Failure to follow launch safety rules | Severity 3 |
| (29) Failure to perform pre-launch review or rehearsal | Severity 2 |
| (30) Failure to comply with readiness requirements | Severity 2 |
| (31) Failure to comply with computing systems and software requirements | Severity 2 |
| (32) Failure to comply with computing systems and software requirements – Critical Flight Safety Systems | Severity 3 |
| (33) Failure to comply with license or experimental permit – technical noncompliance | Severity 1 |
| (34) Failure to comply with license or experimental permit – potential effect on safety | Severity 2 |
| (35) Failure to comply with license or experimental permit – likely effect on safety | Severity 3 |
| (36) Work shift and rest rules violations | Severity 2 |

09/09/2024                                                                2150.3C CHG 12

| Fig. 9-9-o Commercial Space | Severity |
|---|---|
| (37) Hazard analysis, management, and control violations | Severity 3 |
| (38) Failure to comply with flight commit criteria requirements | Severity 3 |
| (39) Failure to comply with tracking requirements | Severity 2 |
| (40) Collision avoidance analysis violations | Severity 2 |
| (41) Communications violations | Severity 2 |
| (42) Failure to comply with radio frequency management requirements | Severity 2 |
| (43) Failure to follow flight or mission rules | Severity 3 |
| (44) Failure to preserve and retain records related to a mishap | Severity 3 |
| (45) Failure to permit FAA access to records† | Severity 3 |
| (46) Failure to comply with compliance monitoring requirements† | Severity 3 |
| (47) Failure to comply with human space flight requirements | Severity 3 |
| (48) Launch/Reentry without authorization | Severity 3 |
| (49) Failure to notify public of planned impact | Severity 3 |
| (50) Failure to establish or follow a hazard control agreement | Severity 3 |
| (51) Lack of clear delineation of roles and responsibilities in hazard control agreement | Severity 1 |
| (52) Failure to submit space object registration information | Severity 2 |
| (53) Untimely submission of space object registration information | Severity 1 |
| (54) Failure to notify of space object removal | Severity 2 |
| (55) Failure to comply with orbital debris mitigation requirements | Severity 2 |
| (56) Creation of debris at end of launch | Severity 3 |