IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

_____
                                )
UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff,               )
                                 )
        vs.                      ) Case No. 2:23-cr-00153-DAK-1
                                 )
ROBERT SUTHERLAND MACLEAN,       )
                                 )
        Defendant.               )
_____)


SENTENCING

BEFORE THE HONORABLE DALE A. KIMBALL


OCTOBER 1, 2025

10:34 a.m. to 11:09 a.m.


Reported by:
Michelle B. Gonsalves, RPR, CRR, CBC, CSR
351 South West Temple, Room 7.431, Salt Lake City, Utah 84101
michelle_gonsalves@utd.uscourts.gov || 801.783.8657

**APPEARANCES**

**FOR THE PLAINTIFF:**

Micheal P. Kennedy, Esq.
**U.S. ATTORNEY'S OFFICE**
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
801.524.5682
michael.kennedy@usdoj.gov

Bryan N. Reeves, Esq.
**U.S. ATTORNEY'S OFFICE**
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
801.524.5682
bryan.reeves@usdoj.gov

**FOR THE DEFENDANT:**

Aaron B. Clark, Esq.
**DENTONS DURHANM JONES & PINEGAR PC**
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111-4050
801.415.3000
aaron.clark@dentons.com

Jordan E. Westgate, Esq.
**DENTONS DURHAM JONES & PC**
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111-4050
801.415.3000
jordan.westgate@dentons.com

**October 1, 2025        Salt Lake City, Utah        10:34 a.m.**

**P R O C E E D I N G S**

\* \* \*

**THE COURT:** Good morning everyone.  We're here in the matter *United States of America v. Robert Sutherland MacLean*, 2:23-cr-153.

The United States is represented by Mr. Michael Kennedy and Mr. Bryan Reeves.

Defendant is present and represented by his counsel, Mr. Aaron Clark and Ms. Jordan Westgate.

This is the time set for sentencing.

Mr. Clark?

Incidentally, I've reviewed all the papers, all the submissions, and I find that the guideline has been correctly calculated.

**MR. KENNEDY:** And, Your Honor, at what point will the Court like to hear from the victim, who would like to address the Court?  Before Mr. Clark speaks or at some other point?

**MR. CLARK:** Your Honor, I'm happy -- if the Prosecution would like to go first this morning, I'm happy to let them go first, if the Court is okay with that.

**THE COURT:** You go first, and then she can speak whenever you decide.

**MR. KENNEDY:** All right, Your Honor.  Why don't we let Ms. Jay address the Court first.

**THE COURT:**  All right.  Come forward, please.

**MS. JAY:**  Your Honor, thank you for giving me this opportunity to speak.  I'll start with this: "suffering ceases to be suffering in the moment it finds meaning."  That's by Victor Frankel.  This meaningful quote was sent to me by someone I never met, but they thought they could relate to me on that day.  So they shared this wisdom with me, and it has stuck with me everyday since.  My suffering pales in comparison to the author's, but it still speaks to me.

While awaiting the verdict, I was so lucky to be surrounded by amazing people.  Some family, some not, all there for me.  They told me stories to make me laugh.  They listened when I cried.  They believed me.  They heard me.  They held me up.

And in those moments, I looked around the room and I realized how lucky I am.  These were the people you want around you when you're in this situation.  You see, I knew I had the good guys on my side, and so I tried to keep reminding myself through the whole thing that I had already won.  I don't know what Mr. MacLean's time looked like while he was waiting for the verdict, but I'm pretty sure you weren't feeling that warm glow that surrounded me in that room.

I'm wondering if you told your innocent version of this so many times that you now have started to believe it itself.  I wonder what you told your family.  Have you admitted

**4**

the truth or am I still just a crazy woman in your story. When they ask why I would make this up, that's the answer I'm most curious to hear.

Mr. MacLean, what did I get out of any of this? There was absolutely nothing in this for me. I didn't enjoy watching my daughter cry listening to me on the stand. I didn't enjoy people telling me what they would have done in my situation because until you're in that situation, you don't even know how you'll react. You don't know you'll feel shame that is misplaced because it wasn't my shame, it was yours; but I carried it.

I didn't invade your personal space for gratification. I didn't repeatedly touch your body after you told me to leave you alone. Why am I carrying this shame? Why was I being judged for my reaction to your inability to respect me. I didn't degrade you, humiliate you. No, I was very polite. I gave you the benefit of the doubt.

I didn't know yet that that first touch was a test, you thought that response was a green light. You thought you could charm me. Make no mistake, Mr. MacLean, no part of me found you charming. No. When I got off that plane, I found you a sorry excuse for a man. And when you made your parting remark about it being nice talking to me, I knew you were telling me that we had a nice flight. But the truth is only one of us had a nice flight and it wasn't me.

5

I called the FBI to report it for one reason only:  I know deep in my heart I wasn't the first person you had done this to.  And more than that, I knew you would have the opportunity to do it again, and I knew you would take that opportunity.

So that's my meaning in all this.  That's why my voice matters, for the next woman who gives you the benefit of the doubt.  I hope my voice in your head stops you the next time you decide to do something like this.  I hope the fear of another trial, another guilty verdict -- you should know after this people will believe the next unsuspecting woman who sits beside you and says that you touched her inappropriately.

Last week I learned of another incident, just two months after our flight, when I read the passenger's statement when she asked the flight attendant to please not wake you up. I was dumbfounded.  Those were my exact words.  She used my exact words.  I felt like I failed when I read that.  But in the end, it's not my job to take on any more of your shame. You deserve all of it, and I'll happily place right squarely in your lap where it belongs.  It's time for you to carry it. It's time for you to feel the shame.

You like to say you only touched my knee.  Well, I don't even remember that, probably because I gave you the benefit of the doubt in that moment, too.  I can assure you, Mr. MacLean if you simply had touched my knee, we'd never have

crossed paths again.  We're here because you felt entitled to touch my breasts repeatedly.

Lastly, your lawyer called me a liar, said my tears for effect.  He questioned my integrity, and that was the hardest part to me, because my integrity matters to me.  I did not speak one untruth in my testimony.  You know that, I know that, and apparently the jury did, too.

I don't plan to think about you any more after this.  You don't deserve space in my head.  I hope the judge gives you whatever he deems to feel is necessary.  But more than anything, I hope my words play in your head the next time you have this opportunity.  Thank you.

THE COURT:  Thank you.

Mr. Kennedy.

MR. KENNEDY:  Thank you, Your Honor.

THE COURT:  Or Mr. Reeves, whoever is going to speak.

MR. REEVES:  No.  I was ...

MR. KENNEDY:  Thank you, Your Honor.  I don't have a whole lot to add to what we put in our sentencing memorandum.  The United States' request is a -- is a sentence at the high end of the sentencing guideline range, which is, as the Court has calculated it, is 18 months.  And, Your Honor, I know that there was the issue out there whether there should be an obstruction enhancement.  I will submit that to the Court's discretion.  I recognize that it's probably not the strongest

7

case for obstruction of enhancement that has ever been presented in court.  I would say that the Defendant's exhibit, I believe it was -- the one that had all the text messages may be actually the best case for that enhancement that can be made, but I'm not pressing it.  The probation officer did not include it.  We're not objecting to the presentence report on that basis.  But we do ask for a high-end sentence.

**THE COURT:**  I'm not giving the enhancement.  Probation didn't give it.

**MR. KENNEDY:**  That's fine, Your Honor.  I just want to make it clear for the record that we're not pressing for it.

And we are also asking for a $30,000 fine which is the midrange of the guideline, and it's also what would be imposed if this were a civil penalty brought by the FAA.

The reasons for this, Your Honor, is that, well, first of all, it is completely appropriate under the 3553(a) factors, which is obviously the touchstone that we all look at.  But listening to Ms. Jay just now, it's impressed on me that Mr. MacLean has taken no responsibility for this whatsoever.  His sentencing memorandum still refers to this as an alleged offense.  I'm sorry, it's not alleged anymore.  They can stop saying alleged.  The jury found otherwise.

And even more appalling to me, Your Honor, is the fact that the sentencing memorandum refers to this as a minor sexual assault.  There's no such thing as a minor sexual

8

assault.  And in this situation where Ms. Jay was assaulted six times over the course of a three-hour flight, and was basically -- I don't -- I use this word very cautiously and advisedly, but basically terrorized for the entire time of this flight.  That's not -- that is a serious offense.  That is not a minor assault.  And so under the factor of recognizing the nature and seriousness of the offense, the stiffest possible sentence is really appropriate here.

The history and characteristics of the Defendant.  He has done this -- he has engaged in misconduct on planes before and after this in very similar ways.  His criminal history shows a propensity for violence and so, again, a -- a high sentence is appropriate.

Deterrence I think is also very important here.  And here I'm speaking of general deterrence.  I can tell the Court, I've got five cases on my desk right now of allegations of sexual abuse on an airplane.  Three of which will probably result in charges of some sort or another.  This is not an isolated crime.  And we need to be able to send a message to the wider public as well that this kind of offense needs to be deterred, and a significant sentence will do that, Your Honor.

And lastly, I want to briefly address the special conditions of supervised release that we have asked for, and that is that the Defendant, while he's on supervised release, be required to inform -- get permission to fly, and also advise

the airline and the pilot in command that he has had this conviction.  And that is to prevent -- to protect the traveling public, to prevent him from being able to do this again, at least during that time frame, so that the airline that he's flying on has the opportunity to protect the -- their passengers.

THE COURT:  Even if -- let me say this about that. Even if I were inclined to grant that, I'm advised by probation that it's -- I just can't do it.  It's not doable.

MR. KENNEDY:  It's not enforceable.

THE COURT:  Enforceable -- if it's not doable, it's not enforceable, yes.

MR. KENNEDY:  Okay.

THE COURT:  So I'm not -- I'm not going to give you that.

MR. KENNEDY:  All right.  And I appreciate that, Your Honor.  I understand, but I did feel compelled to request it.

Does Your Honor have any questions?

THE COURT:  No, thank you.

MR. KENNEDY:  Thank you, Your Honor.

THE COURT:  Mr. Clark?

MR. CLARK:  Thank you, Your Honor.  I have a few things to say here, in addition to what I submitted in our sentencing paperwork.

THE COURT:  I should say, by the way, I don't know if

I did, I read all the papers.

MR. CLARK: Yes. Yes, Your Honor, I wouldn't expect anything less from the Court here.

As the Court is as familiar with as anybody that under Booker now the guidelines are advisory, and the guidelines here recommended a 12- to 18-month sentence. But we're advocating here for a time-served sentence, Your Honor.

Really, when the Court takes everything into account that time served, plus all the additional penalties he's going to face, is a sufficient penalty here for Mr. MacLean to be facing.

Let me just get out of the way that, yes, Mr. MacLean is still maintaining his innocence as is his right, and he's likely to explore his rights fully through appeal in this case. I don't see there being any value in trying to relitigate that or even further address it, Your Honor, but I just -- I note that, which is why the language in our sentencing memorandum was as it was.

That said, Your Honor, we recognize that he's been convicted by a jury of the charged offense. And it's the Court's responsibility now to determine what the proper sentence is, a punishment that is sufficient but not greater than necessary to meet the factors outlined in 18 U.S.C. § 3553(a). As I mentioned, time served sentence should be enough here. Now --

THE COURT:  Which is what, about five months?

MR. CLARK:  It would be approximately five months at this point, Your Honor.

In the sentencing memorandum, we tried to highlight just who Mr. MacLean is outside of this incident, and -- what was the subject of the trial, and to help the Court to understand the impact he's had on his family and community.

The Court knows through the presentence report that he grew up with parents as missionaries and was all over the world in his early years.  He attended the Air Force Academy from 1984 to 1986, and he was honorably discharged.  He is a Stanford graduate, and he is a successful business owner.

As the Court has seen from the numerous letters of support that have been submitted, and from the fact that he has two of his sisters here, and his good friend and business partner here to support him still, that this is just the beginning of who Mr. MacLean is.

He is an important figure in his family.  He -- folks over and over again talk about how generous he is with others, maybe almost to a fault sometimes.  He is paying entirely for his youngest child Sophie for her to be at school at the University of Texas.  His brother, Pastor Jim MacLean, pointed out how often he has been helped.  His sister, Dina Schramm, who is here, and who has gotten through stage 4 breast cancer, credits Mr. MacLean for keeping her alive by

financing her flights and treatments.  And Ms. Schramm is just the latest of his family members that he's supported through that, because as the Court knows through these letters, he also supported his father through stage 4 bone cancer.

The Court also got a letter from his Uncle James Priestly, who is 86, who mentioned that he has been helped financially by Mr. MacLean for many years.

And finally I just point out there that his mother submitted a letter and noted how her health is failing, and she is very concerned that if he serves any more time in custody, she's not going to get the chance to see him again before she dies.

In addition to this, Your Honor, there are some things that I learned further about Mr. MacLean last night in visiting with the family.  From 2009 to 2014, he worked as a volunteer at the Canyon City Colorado Prison.  And for many years, from approximately 2004 to 2025, he has helped with humanitarian aid and mission work, building churches and schools and homes for the needy in Nicaragua, Haiti, France, and the Ukraine, and the pictures that we submitted this morning are from approximately 2014 in one of those mission trips.  He's also supported the country of Haiti with humanitarian aid through a church in New Jersey.

The Court has noted it's not going to apply an obstruction enhancement.  Your Honor, we're grateful for that,

and we think its appropriate.  And I've addressed the incidence with Mr. MacLean's son Alec in the sentencing papers, but I'll just note that it seems to be an unfortunate family incident that has been blown out of proportion, and now it's being aired here in federal court, and it's unfortunate.

The Court has a more complete picture.  The Court knows that Mr. MacLean is not perfect.  It looks like his life kind of fell apart in 2008 with a really difficult divorce from his first wife, and he descended into alcohol use.  And if -- in my looking at things, Your Honor, it seems like every -- almost every wrong choice, it seems like, Mr. MacLean has made has been tied to the use of alcohol.  And I think he would even tell you himself today that one of the answers in moving forward is that he needs to be completely sober.  That's what happened when he was on pretrial release, and it's no surprise there were no incidents while on pretrial release for the five or six months that he did that.  But we see a picture of Mr. MacLean of someone who is not perfect, but he is someone who is really trying to do some good in his family and the world at large, and his family needs him right now.

Now, regarding the incident.  I appreciate that Ms. Jay had the chance to speak.  And I appreciate the Prosecutor's comments here.  I'm trying to thread this needle here, Your Honor, to talk about this appropriately because I think that it was probably lost in my closing argument, but I

think I even noted at the outset that this case is a tragedy either way. There is no part of me that is saying that it is not serious what Ms. Jay was saying happened to her.

I am a little disturbed that mister -- that the Prosecutor has said that he did this -- he did the same thing two months later with the additional incident that was reported and investigated by the FAA, because it's decidedly not the same thing. There's allegations of him causing a disturbance with flight attendants, but there was no allegations of him having touched anyone.

And I say all this, Your Honor, because the needle I'm trying to thread here is this is obviously not a rape case, and there are scenarios where this is at the lower end of the spectrum when we're looking at classifications of sexual assault. All of the allegations here with regard to what happened, happened over the clothing and him groping her breasts, and it hardly takes any imagination to recognize how much worse it could have been, even within the statute. So I'm trying to put that into context, Your Honor, when we're talking about what is the proper punishment here.

I understand, Ms. Jay is not necessarily asking for a pound of flesh today. But in her letter, they're worried about the consequences. They want to make sure that Mr. MacLean suffers appropriately, and is punished for what they're saying has happened, and I'll just note, like, he has already -- is

15

already facing consequences for this.  If we look at his arrest, Your Honor.  He was arrested while he was trying to head to see his son Alec to spend Thanksgiving with him, and that arrest was a jarring incident.

He was then detained and, really, transported from North Carolina to Utah over the course of almost two months, 12 different facilities, often late nights where he's gotten up, and early mornings where he's not really getting the chance to sleep because of delays and processing and whatnot.  It's not an easy time.

And then I can't -- I don't think I can overemphasize just how jarring a thing it is to sit in federal court to hear from the jury immediately that he's been found guilty, and then -- and then almost instantly to be detained in front of his family here and taken into custody where he spent the last three months.  And if we're worried about him facing significant consequences, he is effectively going to be branded with a scarlet letter for the next ten years where he has to register as a sex offender.

So if we're worried about consequences, I don't think additional time in custody would make any more of a point than it already has for Mr. MacLean.  What it would do is it could have significant consequences on the people that Mr. MacLean leans -- on or that lean on Mr. MacLean for his support and help, including his mother and his kids.

So I think in total, Your Honor, what I would say is just with the conduct at issue here and with everything else that completes the picture of who Mr. MacLean is, and who he's trying to be, a time serve sentence is appropriate.  There is going to be a period of supervised release where he's not going to be able to drink alcohol, and I think the Court is going to find it's never going to have to deal with him again after this point.

So I offer that up to the Court.  If the Court has any particular questions for me, I'm happy to answer that.

THE COURT:  I don't.  Thank you, Mr. Clark.

MR. CLARK:  Thank you, Your Honor.

THE COURT:  Mr. MacLean, you're being sentenced.  You have the right to speak if you want to, you're not required to if you don't.

THE DEFENDANT:  I'll speak briefly.

THE COURT:  Go ahead.

MR. CLARK:  Do you want him here, Your Honor?

THE COURT:  That will be fine.

THE DEFENDANT:  Your Honor, first, I'd like to apologize for all the people that I've hurt that are here, and I want to request from you that -- that I be released sooner than later to start rebuilding my life under these difficult circumstances.

My plan is to stay completely sober, and to work hard

to repay -- I've wiped out my savings, my checking, I maxed out my credit cards.  I've taken out a personal loan, lent money from my partner, my business partner, to pay my debt.  And I'd like to -- I have dependents, as you heard, who depend on me, and I'd like to be able to get out there and work hard.

I'm also on the board -- last year I was asked to be on the board of an organization called Free United that helps prisoners as they get released to -- because part of the recidivism rate is so high is they don't have housing, and we help them get housing when they come out, especially when they have a criminal record with a sexual assault.  A lot of places don't rent to them.

So I would like to be able to do that and help my dependents, especially my youngest daughter who is dependent on me.  But my wife -- my new wife, who's here, her kids, and my adult kids, too; and then, of course, my family members.  That's it, Your Honor.

THE COURT:  Thank you, Mr. MacLean.

Anything else, Mr. Kennedy?

MR. KENNEDY:  No, Your Honor, thank you.

THE COURT:  Well, I've read all the materials and spent a lot of time thinking about this case.  I think it is a guideline range sentence, so the sentence will be 15 months.  Now you've already served a bunch of that, and you can also earn a couple of months good time.  But given the verdict, I

don't know how it can be less than that, and it could have been a few months more.

It's the judgment of the Court that the Defendant is placed in the custody of the Federal Bureau of Prisons for a period of 15 months.

Upon release from confinement, the Defendant shall be placed on supervised release for a term of three years.

Within 72 hours of release from custody from the Federal Bureau of Prisons, the Defendant shall report in person at the probation office in the district to which the Defendant is released.

In accordance with the Violent Crime Control Law Enforcement Act of 1994, the Court orders that Defendant submit to one drug test within 15 days of being placed on supervision, and at least two periodic drug tests thereafter as directed by probation, in addition to any other testing requirements ordered.

Pursuant to controlling law, the Defendant shall submit to the collection of a DNA sample at the direction of Federal Bureau of Prisons or United States Probation Office.

Pursuant to the Adam Walsh Child Protection Safety Act of 2006, the Defendant shall report the address where he will reside and any subsequent change of residence to the probation officer responsible for supervision and shall register as a sex offender in any state where he resides, is

employed, carries on a vocation or is a student.

The Defendant shall not commit any federal, state, or local crimes, and as a convicted felon shall be prohibited from possessing a firearm or ammunition.  In addition, the Defendant shall not illegally possess a controlled substance.

Mr. Clark, have you explained the mandatory and standard conditions of supervision?

**MR. CLARK:**  I have, Your Honor.

**THE COURT:**  Thank you.

You must submit to drug and alcohol testing under a copayment plan up to six times per month as directed by probation.

You must participate in and successfully complete a substance abuse evaluation and treatment as directed by the probation office.

You shall refrain from obstructing or attempting to obstruct or tamper in any fashion with the efficiency or accuracy of any prohibited substance testing, which is required as a condition of supervision.

You must not use or possess alcohol or frequent businesses where alcohol is the chief item of order.  I think alcohol has been the main problem here.

You must submit your person, property, house, residence, office, vehicle, papers, computers, other electronic communications or data storage devices or media to a search

conducted by the U.S. Probation Office at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of the condition of release.  Failure to submit to a search may be grounds for revocation.  You must warn any other residents that the premises may be subject to search as pursuant to this condition.

Before I get to the rest of these, talk to me about a fine.  Probation is recommending a fine of $15,000.  There will be some restitution, which will be computed later, I'm told, is that correct?

**MR. KENNEDY:**  Yes, Your Honor.

**THE COURT:**  I'd hate for a fine to impact the ability to pay restitution.

**MR. KENNEDY:**  Your Honor, we did address that in our sentencing memorandum.  We don't -- based on what was in the presentence report about Mr. MacLean's self-reported assets, we don't see that the restitution amount -- that the fine would impact his ability to pay restitution.

We are asking for the midrange fine of $30,000, which again, is what also would be imposed under similar circumstances if this were a civil penalty imposed by the FAA. We didn't just pull that number out of a hat.  We actually put some thought into what the request should be.

**THE COURT:**  Thank you.

21

Mr. Clark?

**MR. CLARK:**  Your Honor, I -- I'd say as minimal a fine as necessary here.  It's not -- I mean, Mr. MacLean described this has not been a cheap process for him to go through this.  He is paying dearly for it already, and we want to make sure that he's able to meet his restitution obligations.

**THE COURT:**  I'll impose a fine of $10,000.

Now these financial -- these financial conditions I'm about to read would go away upon the completion of any payment for any fine or restitution.

But until we know what the restitution is, we know what the fine is now.  Then I have to apply these conditions, too.

You must refrain from incurring new credit charges or opening additional lines of credit unless in compliance with any established payment schedule and obtain the approval of the probation officer.

You must provide the U.S. Probation Office complete access to all business and personal financial information.

You must not maintain more than one personal and/or business checking, savings account, and shall not open -- well, I'd say personal account and a business account, and you need to get the approval of the U.S. Probation Office to do more than those two.

You must not transfer, sell, give away or otherwise convey any asset with a value of $500 or more without the approval of probation.

You must apply all monies received from income tax refund, lottery winnings, judgments and/or anticipated or unexpected financial gains to the outstanding court ordered financial obligations.

You must immediately notify probation of the receipt of any indicated monies.

You must be placed on the State Finder and Treasury Offset Program requiring any state and federal tax refunds be intercepted for purposes of court-ordered financial obligations.

And you must notify the probation office and the office of the United States Attorney of any material change in your economic circumstances that might affect your ability to pay court-ordered financial obligations.

I've already said $10,000 for the fine.

The restitution will be determined.  When you know what it is, you'll advise me and advise counsel, and we can hold a hearing if necessary if it can't be agreed to.

THE COURTROOM DEPUTY:  Do you want a date certain for the deferral of restitution?

THE COURT:  I don't know.  Do I, counsel?

MR. KENNEDY:  Your Honor, I think that would be the

best practice.  It will keep everybody on track when getting it resolved.

THE COURT:  Will 60 days?

MR. KENNEDY:  Yes, Your Honor.  That would give us enough time to pull everything together, and a window within the 90 days that the Court has to actually do this.  And if the Court could -- and I think you've already done this -- but state clearly you do intend to impose restitution.  It's just the amount.

THE COURT:  I do intend to impose restitution.  Do you have any comments on any of that.

MR. CLARK:  That sounds reasonable, Your Honor.

THE COURT:  All right.

There's a special assessment fee of $100 since he was -- Mr. MacLean was convicted of one count.  And there are no counts to be dismissed.

Do you want me to recommend a placement?

MR. CLARK:  Yes, Your Honor. As for placement, as close to Dallas, Texas, as possible.

THE COURT:  The Court recommends that the Defendant be placed in a federal facility as close to Dallas, Texas, as is possible.

Thank you.  We'll be in recess on this matter.

MR. KENNEDY:  Your Honor?  Your Honor, would the Court put on the record the right to appeal?

**24**

THE COURT:  Pardon me?

MR. KENNEDY:  Would the Court put on the record the right to appeal?

THE COURT:  Well, yeah.  You have a right to appeal your sentence.  I assumed that you would along with your new trial stuff.  Yeah, you know you have the right to appeal, right?

THE DEFENDANT:  Yes, sir.

MR. CLARK:  He does, Your Honor.  Thank you.

THE COURT:  Thank you.

MR. REEVES:  Thank you, Your Honor.

*(The hearing was adjourned at 11:09 a.m.)*

C E R T I F I C A T E

STATE OF UTAH        )
                     )
                     )   ss.
                     )
COUNTY OF SALT LAKE  )


        This is to certify that the proceedings in the

foregoing matter were reported by me, Michelle Gonsalves, RPR,

CRR, CBC, CSR, in stenotype and thereafter transcribed into

written form;

        That said proceedings were taken at the time and

place herein named;

        I further certify that I am not of kin or otherwise

associated with any of the parties of said cause of action and

that I am not interested in the event thereof.

        In witness whereof I have subscribed my name this

10th day of November 2025.




*Michelle Gonsalves*
_____

Michelle Gonsalves, RPR, CRR, CBC, CSR